In the Matter of the Application of HOLMES ELECTRIC PROTECTIVE COMPANY, Petitioner, for a Certiorari Order against JOSEPH D. McGOLDRICK, as Comptroller of the City of New York, Respondent.

First Department, October 31, 1941.

*Frank A. Fritz* of counsel [*John M. Farrell* with him on the brief; *Charles T. Russell*, attorney], for the petitioner.

*Meyer Bernstein* of counsel· [*Sol Charles Levine* and *Samuel J. Warms* with him on the brief; *William C. Chanler, Corporation Counsel*, attorney], for the respondent.

DORE, J.   The comptroller of the city of New York after hearings has imposed upon petitioner herein, Holmes Electric Protective Company, under the 1934 retail sales and utility excise tax laws, taxes and penalties totaling, respectively, $62,419.64 (sales tax) and $86,882.75 (excise utility tax).   The retail sales tax was imposed on the ground that petitioner, during the period in question, was a vendor engaged in the sale of telegraphic services on

the receipts of which petitioner was bound to collect and pay retail sales tax. The utility tax was imposed on petitioner's 1935 gross operating income amounting to $2,288,584.26 derived from what the comptroller determined to be telegraphic services. By certiorari under article 78 of the Civil Practice Act petitioner seeks review of both determinations.

The retail sales tax law, so far as relevant (Local Law No. 20 [published as No. 21] of 1934, as amd. by Local Law No. 24 [published as No. 25] of 1934), provides that from December 10, 1934, to December 31, 1935, there shall be paid a tax of two per cent on receipts from every sale in the city of New York of " * * * (b) Gas, electricity, refrigeration and steam, and gas, electric, refrigeration, steam, telephone and telegraph service, for domestic or commercial use; * * *."

The utility excise tax law in question (Local Law No. 21 [published at No. 22] of 1934, § 2, as amd. by Local Law No. 2 of 1935) provides, so far as relevant, that during the calendar year of 1935 " * * * every utility doing business in the city of New York and subject to the supervision of either division of the department of public service, shall pay to the comptroller of the city of New York an excise tax which shall be equal to three per centum of its gross income for the calendar year nineteen hundred and thirty-five, and every other utility doing business in the city of New York shall pay to the comptroller of the city of New York an excise tax which shall be equal to three per centum of its gross operating income for the calendar year nineteen hundred thirty-five. * * *"

The word " utility " is defined (§ 1, subd. [e]): " * * * any person subject to the supervision of either division of the department of public service, and every person whether or not such person is subject to such supervision who shall engage in the business of furnishing or selling to other persons gas, electricity, steam, water, refrigeration, telephony and/or telegraphy or who shall engage in the business of furnishing or selling to other persons gas, electric, steam, water, refrigeration, telephone or telegraph service."

The utility tax was imposed under the alternative provision providing for such tax on any person, whether subject to the Public Service Commission or not, if the person was engaged in the business of selling to others telephone and telegraph service. The Public Service Commission has decided that petitioner is not within its jurisdiction. (*Matter of Holmes Electric Protective Co.,* 37 P. U. R. [New Series] 49.)

Petitioner's business is the protection of its customers' premises against burglary or unauthorized entry. To achieve this end it

offers various types of protective service such as patrol and watchman service, electric protective service, electric sentinel service, local holdup alarm service, etc. Contracts are executed with each customer providing for the particular type of service desired. Thus petitioner so wires the premises to be protected that on any disturbance of the circuit from unauthorized entry or other physical contact, an electric alarm signal is sent over wires leased from the New York Telephone Company (or in part owned by petitioner) connecting the customer's premises with one of petitioner's offices. At such offices throughout the city, petitioner maintains a force of guards and on receipt of the alarm signal showing a disturbance of the circuit on the customer's premises, a guard is immediately dispatched to ascertain the cause of the disturbance. Only a small percentage of the alarms is due to either attempted or successful unauthorized entry. But the guards are authorized to detain persons whom they find on the premises, who are not lawfully there, and petitioner also agrees, under certain conditions, to watch the premises after an alarm, for a stated period, after notifying the subscriber of the result of an inspection, until the subscriber or his representative arrives.

In the case of authorized entry, code signals previously agreed on between petitioner and its customer are sent over the wires, *e. g.*, to signal the arrival of the customer on the premises in the morning or the departure of the customer from the premises at night. A watch signal service is furnished to answer the ancient query " Who shall watch the watchers? " Through this service, the customer's watchman is obliged from time to time to signal the Holmes central office to show he is still on the watch, and if the prearranged signals are not received, the petitioner dispatches a guard to ascertain the cause and sends an emergency notification, if necessary, to the customer by telephone or telegraph. Holdup alarm signals are also furnished, *e. g.*, to banks, providing footrails and press buttons located on the premises, which cause a siren or bell to sound an alarm in case of emergency. A central station emergency alarm service may be procured which, when a signal is received from the customer's premises over the wires, requires petitioner promptly to notify the police department and give the customer's name and the address of the premises from which the alarm was received.

Receipts from all of such services were taxed by the comptroller except those from patrol service, watchman patrol service, watch service and part of holdup alarm service. The issue presented is whether petitioner's receipts and income as taxed were derived from the sale of telegraphic service within the meaning of the local laws imposing the taxes involved.

Analysis of the testimony adduced and of the various types of contract between petitioner and its customers establishes, in our opinion, that petitioner during the taxable period was not engaged in the sale of electric, telephone or telegraph service within the meaning of the tax laws. The electric signals transmitted over petitioner's wires are only incidental to the ultimate contractual purpose between petitioner and its customers, namely, protection of the customer's premises from unauthorized entry. What the customer buys and pays for is not a telegraph service. That consists essentially in the mere transmission of communications, the service of the telegraph company being completed when the message has been transmitted. Petitioner's customers were purchasing and petitioner was selling what began when the electric signals were transmitted, namely, some form of protection of the customers' premises.

Railroad and subway companies use electric signal systems to provide safe operation of their trains. Obviously, such companies are not engaged in telegraphic service for their customers, as such term is ordinarily understood. The customers of such companies are buying and the company is selling transportation. Here the customers are buying not telegraphic service as it is ordinarily understood but protection of their premises.

Petitioner's system cannot be used for the purpose of communication between the subscriber and the general public or persons other than the petitioner, or even between the subscriber and petitioner, except to the limited extent of the prearranged communication the particular type of service employs — all for the purpose of protection.

The comptroller, claiming that petitioner furnishes or sells electric, telephone and telegraphic service within the meaning of the taxing statutes, contends that *Holmes Electric Protective Co. v. Williams* (228 N. Y. 407) is decisive of the case at bar. In that case it was shown, as is here conceded, that petitioner was originally incorporated under the Telegraph Act (Laws of 1848, chap. 265), and the company was held to be a telegraph company within the purview of that act, having a franchise from the State of New York, with the right to keep its lines or wires in the streets of the city of New York without being obliged to obtain a secondary franchise from the city for that purpose. CRANE, J., stated the issue in that case as follows: " The sole question persented by this appeal is whether the plaintiff having incorporated under the ' Telegraph Act ' received thereby a franchise or authority from the State to maintain its wires and carry on its burglar alarm system as above described."

We think that case is not controlling, as the issues here presented were neither presented nor considered. The issue before us is whether petitioner sold telegraphic service within the contemplation of the tax laws involved. In the *Williams* case the Court of Appeals impliedly recognized that, although petitioner was incorporated under the Telegraph Act, its business was not a telegraph business as ordinarily understood, when the court said: " Read strictly the ' Telegraph Act ' of 1848 might seem to apply solely to telegraph companies as understood at the present time, but such has not been the interpretation given by the courts or the public officers and departments dealing with companies and associations incorporated under the act." The court proceeded to point out that although telegraph companies were not known in 1848 when the act was passed, it had been held to be applicable to such companies and also held applicable to district messenger companies requiring wires for calling messengers, auxiliary fire alarm companies, and companies transmitting stock quotations, all of which had been incorporated as " telegraph companies."

Petitioner was in fact authorized under its charter to conduct a general telegraph business as well as a protective burglary alarm business, but this record establishes that the transactions here taxed were a protective burglar alarm business rather than general telegraph communications. The true tests for the purpose of the taxing statute are the actual transactions engaged in and taxed during the taxable period.

" A tax law should be interpreted as the ordinary person reading it would interpret it." (*Howitt* v. *Street & Smith Publications, Inc.*, 276 N. Y. 345.) As was said by the Public Service Commission in *Browne* v. *National District Telegraph Co.* (24 St. Dept. Rep. 101, 110): " The Commission is of the opinion that the telegraph and telephone companies over which it has been given power of regulation are those generally recognized as such by the common understanding of man and that it would be a violent interpretation of such understanding to hold that this company is generally recognized as either a telegraph or telephone company."

In a more recent decision (*Matter of Holmes Electric Protective Co.* (Dec. 18, 1940, 37 P. U. R. [New Series] 49) the Commission cited the *Browne* case with approval and held this petitioner was not under its jurisdiction as a telegraph or telephone company.

In *Ullmann Brokerage Corporation* v. *City of New York* (261 App. Div. 1070; leave to appeal denied, 262 id. 726) this court sustained an order of Special Term denying the city's motion for judgment on the pleadings in an action for a declaratory judgment declaring that this petitioner's services rendered to the plain-

tiff in that case, a customer of petitioner, were not taxable under Local Law No. 31 of 1936 (a retail sales tax law identical with Local Law No. 20 of 1934 here involved). In affirming, without opinion, that order of Special Term, this court did not necessarily adopt the reasoning of Special Term. It was only necessary to hold that the complaint therein stated a cause of action and that judgment could not be granted on the pleadings alone without a disclosure of the evidentiary facts at trial showing whether in fact the service taxed was telegraphic or otherwise. In this case, however, we have a review after a full hearing, in which the facts relating to the nature of the service have been adduced.

In *Dun & Bradstreet, Inc.,* v. *City of New York* (276 N. Y. 198) the city contended that the furnishing of bound reference books was taxable as a sale of tangible personal property. The Court of Appeals, however, affirming denial of a motion to dismiss the complaint, said: " The information furnished is of value to the subscribers and for it they pay but not for the paper upon which the information is conveyed or for the reference books which are only guides to assist in the rendition of appellant's service. One does not think of a telephone company as a seller of books to its subscribers. It renders a service. To make that service efficient, it furnishes its subscribers with books containing a list of its subscribers with their call numbers. ' The paper is a mere incident; the skilled service is that which is required.' [Citing cases.] "

Similarly, in *Merchants Refrigerating Co.* v. *Taylor* (275 N. Y. 113), the city sought to impose sales and utility taxes upon refrigeration services allegedly sold by the appellant in that case. The Court of Appeals, in holding the laws inapplicable, said: " We agree with the appellant that the cooling of its storage rooms for the preservation of merchandise is not a sale of refrigeration or a sale of refrigeration service within the wording or meaning of this Local Law No. 20 (published as No. 21), as amended by Local Law No. 24 of 1934 (published as No. 25). The temperature may attract customers and increase the charge but safe storage is the service sought and paid for."

In *Matter of 320 West 37th Street, Inc.,* v. *McGoldrick* (281 N. Y. 132) an owner of real estate submetering and selling electric current to its tenants was held not to be a utility under the then existing New York city utility excise tax, the law involved in these proceedings, although the statute there expressly imposed a tax upon the sale of electricity or electric service. The court said: " The law, read as a whole, is quite evidently intended to apply to those engaged publicly in the business of distributing the named commodities or furnishing the named services."

We think the reasoning of the above cited cases is persuasive in petitioner's favor. In enacting the sales tax and the excise utility tax, we think the legislative intent was to tax telegraphic services as such are ordinarily understood. Obviously, petitioner was not selling telephone or telegraphic service as such is ordinarily understood. It installs and operates electric alarm systems on its customers' premises for the sole purpose of affording protection of the premises.

Finally, if there were any doubt, that doubt should be resolved in favor of petitioner, the taxpayer. Tax statutes "in case of doubt * * * are construed most strongly against the Government, and in favor of the citizen." (*Gould* v. *Gould*, 245 U. S. 151, 153; *Matter of Vanderbilt*, 281 N. Y. 297, 313.) "The government takes nothing except what is given by the clear import of the words used, and a well-founded doubt as to the meaning of the act defeats the tax." (*People ex rel. Mutual Trust Co.* v. *Miller*, 177 N. Y. 51, 57.)

Petitioner in this proceeding expressly states it wishes to raise for review only the question of the taxability of receipts from its burglar alarm service and hence does not here urge the invalidity of the tax as imposed on certain other relatively small items.

The determinations of the comptroller so far as sought to be reviewed herein should be annulled, with fifty dollars costs and disbursements to the petitioner.

MARTIN, P. J., O'MALLEY, TOWNLEY and COHN, JJ., concur.

Determinations of the respondent unanimously annulled, with fifty dollars costs and disbursements to the petitioner.