In the Matter of OWL PROTECTIVE Co. INC., et al., Appellants, against BENJAMIN F. FEINBERG et al., Constituting the Public Service Commission of the State of New York, et al., Respondents.

Third Department, March 21, 1957.

*Gerard I. Nierenberg* and *Samuel Landa* for appellants.

*Kent H. Brown, George H. Kenny* and *Charles R. Gibson* for Public Service Commission, respondent.

*Robert W. Doyle, Ralph W. Brown* and *Eric B. Nelson* for New York Telephone Company, respondent.

FOSTER, P. J. This is an appeal from an order of the Supreme Court at Special Term, which dismissed on the merits a proceeding under article 78 of the Civil Practice Act to review a

determination of the Public Service Commission. The commission dismissed a complaint of petitioners-appellants which averred that the New York Telephone Company refused leased line service in connection with the installation and maintenance of burglar alarm systems. The determination of the Public Service Commission, and the order at Special Term, were based as a matter of law upon a decision of this court (*Matter of Owl Protective Co.* v. *Public Service Comm.*, 254 App. Div. 600), which in turn cited as an authority a decision of the Court of Appeals (*Holmes Elec. Protective Co.* v. *Williams*, 228 N. Y. 407).

No factual dispute is involved on this appeal. The complaint of petitioners-appellants, as presented to the Public Service Commission, alleged in substance that a major portion of their business was the installation of burglar alarms on the premises of their subscribers; that the respondent New York Telephone Company has refused their subscribers leased lines extending to a telephone answering service, which would call the police in the event that an alarm went off during the night. The petition for a review of the commission's determination dismissing the complaint has more extensive allegations but the decisive issue remains clear so far as this appeal is concerned. The rationale of the determination against petitioners-appellants is based solely upon the proposition that they are not incorporated under the Transportation Corporations Law, and hence, it is argued, are not entitled as a matter of law to use wires in the public streets as an adjunct to their business. Concededly petitioners-appellants are merely private business corporations, and possess no local consents or franchises from the public authorities.

The hearing held by the commission was not held as a matter of statutory requirement but the record thereof reveals some pertinent information. The New York Telephone Company has a tariff schedule which covers leased wires for communication purposes other than by voice communication (P.S.C. Tariff No. 800, § 12). Such leased channels are furnished for the following purposes: teletypewriter communications, Morse communications, telautograph communications, remote operation and control of a mobile radio telephone or radio telegraph system, remote metering, supervisory control and miscellaneous signaling purposes. The telephone company has interpreted the phrase "miscellaneous signaling purposes" to include wires for burglar alarm purposes. All tariff provisions however must be read in the light of any applicable requirements of law a telephone company witness explained.

Since some time in 1953 or 1954 the telephone company has refused requests for leased wires in connection with burglar alarm systems which would terminate at an answering bureau other than a police station. It had nevertheless, as of January 27, 1954, leased some 27 wires for the same purpose which terminated at answering bureaus in the counties of Bronx, Kings, Queens and Nassau, and those wires were still operating at the time of the hearing. This inconsistent situation was explained on the basis that the matter had not come to the attention of the general headquarters of the telephone company until some time in 1953 when an application was made by the New York firm of Abercrombie & Fitch for a leased wire for burglar alarm purposes to connect with equipment installed by the appellant Owl Protective Company and an answering bureau. This request was refused on the advice of counsel and on the authority of the prior *Owl* case decided in this court and the *Holmes* case decided in the Court of Appeals. In dismissing the complaint herein the commission and the Special Term confirmed this view.

That our decision in the prior *Owl* case is authority for the position taken by the commission in this case, and for the order at Special Term, cannot be denied; although we do not agree with the commission's statement: '' there is no material difference between the burglar alarm business determined to be unlawful in the prior *Owl* case and the burglar alarm business conducted in the manner disclosed by the present record.'' In the present case the application for a leased wire came from the customer who was to be served by the burglar alarm company, and in view of the tariff schedule mentioned conceivably this distinction might have some significance. But in any event we have come to the conclusion that our decision in the prior *Owl* case was based upon a misconception of the *Holmes* case and should no longer be followed.

In the *Holmes* case the plaintiff was incorporated under a statute of 1848 known as the '' Telegraph Act '', and various acts amendatory thereof. Upon its incorporation it purchased an existing system of overhead wires in the city of New York, then used for burglar alarm purposes, from the Holmes Burglar Alarm Telegraph Company and the American District Telegraph Company. It maintained a number of central offices in the boroughs of Manhattan and Brooklyn which were connected by its own wires with a number of business houses and residences. At the time of the trial of its action against the City of New York it was operating about 4,500 miles of wire in the city. Until 1891 it maintained its wires overhead in the streets,

but thereafter the wires were placed underground. After some years the City of New York questioned the right of the plaintiff to maintain its wires in the streets and threatened to remove them. An action ensued to restrain the city from carrying out its threat. When the case reached the Court of Appeals a majority of that court held that plaintiff was a public service corporation, engaged in the telegraph business, and derived its authority from the State to maintain its wires and carry on its burglar alarm system as described.

From this brief resumé it appears to us now that the decision in the *Holmes* case is not decisive of a controversy such as we have here, where a business corporation desires to lease wires from a public utility for burglar alarm purposes. The burglar alarm business is not subject to regulation. (*Browne* v. *National Dist. Tel. Co.*, 24 N. Y. St. Dept. Rep. 101; *Matter of Holmes Elec. Protective Co.*, 37 P. U. R. [N. S.] 49; *Holmes Elec. Protective Co.* v. *McGoldrick*, 262 App. Div. 514, affd. 288 N. Y. 635; *Holmes Elec. Protective Co.* v. *City of New York*, 304 N. Y. 202). Possibly the Legislature might make it so but thus far it has not seen fit to do so.

A misconception over the effect of the decision in the *Holmes* case may have arisen from some language used in one of the majority opinions. For instance it was said (p. 414): "All telegraph messages are but electric signals having well-understood meanings. A burglar telegraphed his entrance. He sent his message over a wire. That his act was involuntary and unconscious made it none the less a telegraph message." This language must be read in context with and in the light of the issue before the court, i.e., whether the plaintiff, incorporated as a telegraph company, was engaged in the telegraph business in the use of its *own wires*. A majority of the court took the view that the plaintiff was engaged in telegraph business in conformity with the powers conferred upon it by its charter. A minority took the opposite view that it was not so engaged because its wires were not open to the public for the transmission of indiscriminate messages.

The decision thus made should be limited to the peculiar factual situation of the case and the issue involved. We find it difficult to believe that the court intended to hold that every business house that leases a wire for its own private signaling purposes becomes engaged in the telegraph business within the meaning of the Transportation Corporations Law. Because a burglar may involuntarily telegraph his unlawful entrance over a leased wire it does not follow that either the owner of the protected

establishment, or the burglar alarm company, is engaged in the telegraph business. If that were so then no business house or individual could lease a wire for private purposes unless incorporated under the Transportation Corporations Law. We believe this to be contrary to ordinary usage and practice. It is a matter of common knowledge that telephone wires, for instance, are leased to various business houses, organizations and individuals who use them for their own private purposes and are not classed as public service corporations. We can perceive no difference in principle that requires placing telegraph wires in a different category as a matter of law. Of course there is the theoretical possibility that the lessees of any private wire may use it for a service that belongs only to a public utility, but this danger appears to us to be rather remote and easily discoverable. In any event if a rule of exclusion is to be applied against one private user it should be applied against all, otherwise the door is open to arbitrary discrimination, and the discrimination already indicated which the record discloses. The New York Telephone Company, owners of the wires sought to be leased by petitioners-appellants, is a public utility already under the regulatory jurisdiction of the Public Service Commission, and the Legislature has evinced no intent to require duplicate regulation for the users of leased wires; and the *Holmes* case, as we now view it, does not support our decision in the prior *Owl* case as a matter of law. The significant point of distinction is the ownership and maintenance of the wires under public regulation, and not the mere use thereof. There may be other features of a factual nature which require consideration by the Public Service Commission. We limit this decision solely to the issue of law presented. Of course in view of the previous decision by this court the determination of the commission cannot be classed as arbitrary or capricious but the nature of our present decision compels us now to say that the commission should reconsider the matter.

The order should be reversed and the determination of the Public Service Commission annulled, with $50 costs and disbursements, and the matter remitted to the commission to entertain the complaint of petitioners-appellants.

BERGAN, COON, HALPERN and GIBSON, JJ., concur.

Order reversed, on the law and facts, and the determination of the Public Service Commission annulled, with $50 costs and disbursements, and the matter remitted to the commission to entertain the complaint of the petitioners-appellants.