Bernard S. Meyer, J.
This article 78 (Civ. Prac. Act) proceeding, brought pursuant to section 4 of chapter 148 of the Laws of 1952 and section A-2.4 of the Nassau County Administrative Code (L. 1939, chs. 272,704, as amd. by Local Laws, 1952, No. 1 of County of Nassau) brings up for review the County Comptroller’s determination of a deficiency in the admissions tax due by Roosevelt Raceway for the year 1959. The county raises the preliminary question whether the raceway is a ‘{ person aggrieved ’ ’ since the tax is imposed in the first instance on the patron, but section 2 of chapter 148 of the Laws of 1952 and section 4-2.1 of the Nassau County Administrative Code both provide that in ease of failure to collect the tax it shall be imposed on the racing corporation or association conducting the meeting, and it is not disputed that the tax in question was not collected by the raceway and has been paid by it, under protest, out of its own funds. It is, therefore, entitled to maintain this proceeding.
There is no dispute as to the facts. The raceway charges occasional clubhouse patrons $3.85 of which $2.33 is the raceway’s charge and the balance is county, State and Federal taxes. The county tax rate is 30% and on such an admission the tax is 70 cents. It is the county’s contention that it is entitled to collect 70 cents on every clubhouse admission. For reasons the good faith of which is not challenged, the raceway admits shareholders to the clubhouse for $1 on which it collects county tax of 30 cents, patrons at special functions for either $1.46 (collecting county tax of 43.8 cents) or $1.61 (collecting county tax of 48.3 cents) depending on the type of function, and patrons who are members of the Diners Club or American Express credit plans for $1.61 (collecting county tax of 48.3 cents). The county’s brief characterizes all except the $2.33 *376 admission as rebate prices, but it is undisputed that no rebate is given and the raceway collects no more for admission from the various other types of clubhouse patrons than shown above. It is likewise undisputed that patrons who are members of credit plans may, but are not required to, eat or drink while attending the races, and that all classes of clubhouse patrons have access to the same seats and other facilities.
The question for determination in this proceeding is whether the tax base is the amount actually charged by the raceway or the highest amount that it could have charged. Section 45 of chapter 254 of the Laws of 1940 specifically provides with respect to harness raceways: “No county * * * may impose, levy or collect a tax on admission fees or tax on admission ”. By chapter 148 of the Laws of 1952 the imposition of a tax on general admission was authorized notwithstanding the provisions of chapter 254 of the Laws of 1940, and by local law (Local Laws, 1952, No. 1 of County of Nassau) a tax at the rate of 15% was imposed by Nassau County upon such general admissions. In 1954, the enabling statute was amended to include “ any * * * charge required to be paid by such patrons for admission to the clubhouse or other special facilities ” (Local Laws, 1954, No. 1 of County of Nassau, § 1) and by chapter 837. of the Laws of 1956 the permissible tax rate was increased to 30%. Corresponding changes were made in the Nassau County Administrative Code by Local Law No. 1 of 1954 and Local Law No. 1 of 1956. The same chapter 837 of the Laws of 1956 added the so-called “ Construction” provision to the harness racing statutes Pari-Mutuel Revenue Law, § 45-a subd. 11) which provides that, “ Except as otherwise provided in chapter one hundred forty-eight of the laws of nineteen hundred fifty-two * * * no county * * * may impose, levy or collect a tax on admission fees or tax on admission ”.
With respect to the taxes now in dispute, the pertinent sections of the Nassau County Administrative Code are subdivision 3 of section 4-2.0 which defines the term “admissions” by reference to chapter 148 of the Laws of 1952, section 4-2.1 which imposes the tax, in the following language: “A tax is hereby imposed on all admissions to harness horse race meetings conducted at race meeting grounds or enclosures located within the county of Nassau at the rate of thirty per centum of the admissions price. The racing association or corporation conducting a harness horse race meeting shall, in addition to the admissions price, collect such tax on all tickets sold or otherwise disposed of to patrons for admission with the sole *377 exception of those issued free passes, cards or badges in accordance with the specific authority of the laws of the state of New York” (Local Laws, 1956, No. 1 of County of Nassau), and section 4-2.9 which gives the County Comptroller power “ To prescribe methods for determining the amount of the general admission and for determining the tax ’ (Local Laws, 1952, No. 1 of County of Nassau.) It is conceded that the Comptroller has made no regulation or order pursuant to that power. The pertinent section 1 of chapter 148 of the Laws of 1952, as amended by chapter 287 of the Laws of 1954, defines the term “ admissions ” to mean “ the admission charge required to be paid by patrons for admission to a harness race meeting, including any charge required to be paid by such patrons for admission to the clubhouse or other special facilities ” and section 2 which, in pertinent part, authorized the county by local law to require the raceway ‘ ‘ to collect in addition to the admission price of tickets sold or otherwise disposed of to patrons for admission * * * a tax not in excess of thirty per centum of such admission price ” (as amd. byL. 1956, oh. 837, § 3).
The quoted language of chapter 148 of the Laws of 1952 is determinative of the question here at issue, both because the Nassau County Administrative Code refers to it for the basic definition and because the scope of the local law is limited by the enabling act under which it was passed. The plain meaning of the statutory language mandates the conclusion that the tax base is the amount actually charged by the raceway, for it is the “ charge required to be paid ” including “ any charge required to be paid * * * for admission to the clubhouse ” (italics supplied) that determines the admission price on which tax must be collected. The “ charge required to be paid” for the various categories of reduced rate tickets issued by the raceway is the reduced rate. By relating the definition to a “required” charge, the Legislature has left to the raceway, subject only to the power of the State Harness Racing Commission to fix minimum and maximum charges for admission (L. 1940, ch. 254, § 36, as amd.), determination of the charge that shall be required, and, thus, of the tax base. By indicating that the “ charge ” in question is that “ paid ” and, with respect to clubhouse admissions, adding the modifying word “ any,” the Legislature has clearly stated that the tax base is whatever price is actually charged, not the highest price that might have been charged.
The conclusion thus reached from the wording of the statute is fortified by the usual rules of construction relating to tax *378 statutes. ‘ ‘ In dealing with the applicability of tax statutes, it is a basic rule not ‘ to extend their provisions, by implication, beyond the clear import of the language used ’ (American Locker Co. v. City of New York, 308 N. Y. 264, 269). In case of doubt, they are to be construed more strongly against the Government and in favor of the citizen (Gould v. Gould, 245 U. S. 151, 153; Matter of Good Humor Corp. v. McGoldrick, 289 N. Y. 452),” (Matter of Grumman Corp. v. Board of Assessors, 2 N Y 2d 500, 510). The county argues that tax statutes are to be construed to insure the collection of taxes. While there is such a rule of construction (County of Nassau v. Lincer, 254 App. Div. 746, affd. 280 N. Y. 662; City of Rochester v. Bonded Municipal Corporation, 256 App. Div. 462; Matter of Treasurer of City of N. Y., 183 Misc. 84; Intercounty Operating Corp. v. Terry, 181 Misc. 362; Matter of Section 14, Block 4367, Lot 1, 117 N. Y. S. 2d 36), it is clear from the statement of the rule and from an examination of the eases in which it has been applied that it relates to the collection not the imposition of a tax. The admission tax not being applicable to amounts not charged by the raceway, there is no tax due of which collection is to be insured. The county argues that the purpose of the 1954 amendment, which extended the tax base to include not only general admission but clubhouse admission as well, was to allow the county to produce additional revenue. It did, of course, increase the tax base (County of Saratoga v. Saratoga Harness Racing Assn., 4 N Y 2d 622), but to say that it must, therefore, be inferred that it intended to authorize taxation of what might have been charged rather than the ‘1 charge required to be paid ” is to extend the provisions of the statute by implication, beyond the clear import of the language used.
The county points to a State regulation which, for the purposes of the admissions taxes imposed by the State under section 2 of chapter 233 of the Laws of 1934 (as amd.) with respect to running races and section 39-a of the Pari-Mutuel Revenue Law (added by L. 1952, ch. 266) with respect to harness races, provides that if a person is admitted free or at a reduced rate the tax is imposed “ on an amount equivalent to the amount * * * paid by other persons for the same or similar accommodations ” (N. Y. Off. Comp, of Codes, Rules & Regulations, p. 1471) and contends, first that while the Comptroller has not adopted a formal regulation, he has operated under and thus administratively applied the State regulation, and second, by analogy to the rule that uniformity of construction between State and Federal taxing statutes is *379 desirable (Matter of Weiden, 263 N. Y. 107), that the State and county statutes ought to be similarly construed. The short answer is that while section 2 of chapter 233 of the Laws of 1934 and chapter 266 of the Laws of 1952 contain the same language that is used in section 2 of chapter 148 of the Laws of 1952 to authorize the county to impose its tax, the State provisions set forth no definition of “ admissions.” While the State regulation may, therefore, properly define the “ admission price,” the County Comptroller (1) could not adopt a regulation inconsistent with the definition of the term “ admissions ” set forth in section 1 of chapter 287 of the Laws of 1954 and (2) has not taken the formal action necessary under section 4-2.9 of the Nassau County Administrative Code to do so even if he could. The lack of identity in the statutes also renders inapplicable the Weiden case rule (People ex rel. Mosbacher v. Graves, 254 App. Div. 438, affd. without opinion 279 N. Y. 793).
The county argues further that the raceway, during 1957 and 1958, offered similar reduced rates and the tax was collected during those years on the basis now contended for by the county. This administrative construction, it is said, controls, and the raceway’s failure to object constitutes its tacit admission that the county’s construction of the law is correct. While the right to object to illegal imposition of a tax for any given year may be lost by failure to raise the objection within the time or in the manner required by law, the waiver relates only to the year in question. The assessment for each year is separate and each final determination of tax is separately reviewable (L. 1952, ch. 148, § 4; Nassau County Administrative Code, § L-2.4). An administrative construction of two years’ standing is not a practical construction “ ‘ acquiesced in by all for a long period of time ’ ’ ’ within the rule of construction referred to (Faingnaert v. Moss, 295 N. Y. 18, 26), but even if it were, such a practice may not be given weight when it follows ‘ ‘ a course not approved by either statute or rule ” (Matter of Hines v. La Guardia, 293 N. Y. 207, 216).
Finally, it may be urged that the words “ sold or otherwise disposed of ’ ’ (which are common to L. 1934, ch. 233, § 2; L. 1952, ch. 266; L. 1952, ch. 148, § 2 and Nassau County Administrative Code, § 4-2.1) authorize imposition of tax on the full price though less than the full price is paid. The Attorney-General has ruled with respect to running races (L. 1934, ch. 233, § 2) that where admission was granted upon purchase of a war bond, the track receiving no money from the patron, it was nonetheless required to pay tax on the basis of the admis *380 sion charge fixed by the Racing Commission (1943 Atty. Gen. 408). Such admission was, of course,. “ otherwise disposed of ” and tax was properly collected on the basis of the admission price. But the words “sold or otherwise disposed of” mean sold or disposed of otherwise than by sale, and it cannot be said that an admission sold for $1.21 is a $2.33 admission disposed of otherwise than by sale, even though the same facilities are available to the purchaser of each. A sale at a reduced rate is nonetheless a sale. In other words, as the State regulation quoted above recognizes, there is a distinction between free and reduced rate admissions. That distinction is also recognized in the definition set forth in section 1 of chapter 287 of the Laws of 1954, which limits the local (but not the State admissions tax) to the charge required to be paid.
Tax statutes are to be given a practical construction (Matter of Mendoza Fur Dyeing Works v. Taylor, 272 N. Y. 275, 281; Matter of Colgate-Palmolive-Peet Co. v. Joseph, 308 N. Y. 333, 340). Of the total admissions actually charged by the raceway in 1959 of $2,798,361.51, the $2.33 clubhouse admission accounts for $165,814.45, or slightly less than 6% in dollar volume. The testimony before the Comptroller was that only 2%% of the total number of patrons paid the $2.33 admission. In this era of discount houses, trading stamps and factory-to-you merchandising, it would be supererogation for the court to expound upon the psychological value from a sales point of view of reduced rates. It would also be out-of-place, since by granting the Harness Racing Commission authority to fix only maximum and minimum charges for admission, the Legislature has made clear that, between the extremes thus fixed, detérmination of the price actually to be charged is for the raceway. In doing so it is recognized, as the Mendoza and Colgate cases do also, that it is the practicalities of the business operation involved that govern. The county does not claim that the raceway has not acted in good faith or that there are not practical business reasons for the various classes of reduced rate tickets established by the raceway. It says, simply, that whatever the raceway chooses to charge, the county must be paid on the basis of the highest amount that could have been charged. While the Legislature could, of course, have so provided, it has not done so. Rather it has clearly provided the reverse by (1) directing that the base of the county tax be the charge required to be paid, (2) leaving the determination of that charge within maximum and minimum limits to the raceway, and (3) expressly directing that except as thus specifically provided, the county may not impose, levy or collect tax on admission fees or admissions.
*381 The prayer of the petition is, therefore, granted. The determination of the Comptroller is annulled, and he is directed to refund to petitioner the additional tax illegally assessed. Interest may not be allowed, however (Nassau County Administrative Code, § 4r-2.5, subd. 3). Settle order on notice.