Robert E. Dempsey, J.
This is an action for a declaratory judgment and a permanent injunction restraining defendants from taking any actions to impose an admissions tax on parking revenues retroactive to April 9,1954. The core issue is whether the City of Yonkers (City) has been empowered to tax such receipts as opposed to its conceded right to impose and collect taxes upon defendant Yonkers Raceway, Inc. (Raceway) based upon admission fees. Raceway has moved for a preliminary injunction and to quash a subpoena served by the City Comptroller ; defendants have cross-moved to dismiss the complaint and to compel compliance with the subpoena.
By chapter 148 of the Laws of 1952, effective March 20, 1952, the State of New York passed an enabling act empowering cities having a population in excess of 100,000 (e.g. the City of Yonkers) to adopt and amend local laws taxing “general admissions ’ ’ to harness horse race meetings held in such cities. The term “general admissions” was defined as “only the general or basic admission charge * * * not including any additional or other charge * * * for admission to the clubhouse or other special facilities within the race meeting grounds or enclosure at which the harness race meeting is conducted. ” (emphasis supplied). By Local Law No. 2, adopted on April 8, 1952, a tax of 15% was imposed by the City of Yonkers on ‘ ‘ general admissions to harness race meetings conducted in the City of Yonkers ” (§.2). The New York State enabling act was amended in 1954 by deleting the term ‘1 general admissions ’ ’ and substituting an enlarged scope of the term “ admissions ” as follows: “ 2. For the purposes of this act, the term ‘ admissions ’ shall mean the admission charge required to be paid by patrons for admission to a harness race meeting including any charge required to be paid by such patrons for admission to the clubhouse or other special facilities within the race meeting grounds or enclosure at which the harness race meeting is conducted. ” (L. 1954, ch. 287, § 1, eff. March 29, 1954 ; emphasis supplied).
The City of Yonkers, availing itself of the legislative grant, ■ thereupon enacted and adopted Local Law No. 7 of 1954 (eff. April 9, 1954), increasing the base of its tax on admissions in language virtually identical to that of the statute as follows: *591 ‘ ‘ Admissions. The admission charge required to be paid by patrons for admission to a harness race meeting, including any charge required to be paid by such patrons for admission to the clubhouse or other special facilities within the race meeting grounds or enclosure at which the harness race meeting is conducted. ”
The permissible tax levy was increased from 15% to 30% by chapter 837 of the Laws of 1956. Corresponding increase was mandated by the City in Local Law No. 7, effective June 12, 1956. The enabling acts and the Local Laws of the City of Yonkers in implementation thereof (Code of Ordinances of City of Yonkers, § 92-1 et seq.) also provide that plaintiff Baceway shall collect the prescribed admission taxes from the patrons. Failure to impose such taxes left and leaves Baceway liable for such unpaid tax moneys. Baceway must by statute maintain and periodically furnish such records as prescribed by the City Comptroller for the purpose of fixing the tax liability; that such records be preserved by Baceway for a period of three years (or longer if required by the Comptroller). The Comptroller has administrative powers to fix the amount of tax based upon the returns submitted or upon 1 ‘ such information as may be available ” and Baceway is specifically given an administrative remedy of a hearing and the judicial article 78 review as to any final adverse determination by the Comptroller (§ 92-6) which remedies are purportedly “ exclusive ” (§ 92-8), and such exclusivity of remedy is urged by the City in its motion to dismiss the request for a preliminary injunction. The Comptroller is granted a limited power of subpoena (§ 92-11). There is a provision for penalties and interest (§ 92-12).
The Baceway has submitted daily reports for all racing days since the effective date of Local Law No. 7 of 1954 containing a breakdown of admissions charged for: (1) grandstand; (2) clubhouse; (3) reserved grandstand; (4) clubhouse exchange; (5) reserved clubhouse; (6) press; (7) “party rights” and others. Varying fees were charged for these categories. The appropriate taxes were collected by the Baceway and paid over to the City Comptroller. (See Matter of Roosevelt Raceway v. Redell, 24 Misc 2d 374, affd. on opn. below 12 A D 2d 787.) Similar taxes have been imposed on “ admissions ” by Westchester County (as of Jan. 1, 1960) and the State of New York (as of March 27, 1952) and by the United States Government (from 1954 to Dec. 31,1965). None of these taxing authorities received or demanded any tax upon parking revenues.
The City of Yonkers accepted the daily reports and the Baceway’s computation of taxes on “ admissions ” from 1954 until *592 1970. In the 1970 State legislative session the City sponsored a bill to authorize it to impose a tax of 6% on parking fees. The bill failed to get out of committee. By letter to the Raceway dated November 13, 1970, the City Comptroller claimed that parking revenues were taxable by the City by reason of the 1954 State and local enactments and demanded that records for the 16-year period be preserved and be made available upon demand. Thereafter, the Comptroller served the subpoena duces tecum in question, dated January 28, 1971 and returnable on February 5, 1971, and requiring the Raceway to appear with voluminous records dating back to 1952.
The Raceway has alleged both in the complaint and by affidavit in support of this motion (affidavit of Stanley Tanaribaum, plaintiff’s secretary) that the harness race meeting grounds are enclosed by a perimeter of buildings, fences and gates; that the parking fields operated by the Raceway (patrons also park at private lots in the general area) consist of a parkodrome and open lots all of which are outside of the enclosed racing area; that whether a patron parks in a lot operated by the Raceway or elsewhere, or arrives by other transportation, has no bearing upon his payment of some type of admission fee to the racing area. These physical facts are not disputed. The City’s conclusory contention that “ crucial fact questions as to what are the geographic limits of the enclosure or race meeting grounds at Yonkers Raceway, as to the nature of the charge for admission to a parking facility at the raceway grounds ” (affidavit of Maurice F. Curran, Feb. 23,1971) is rejected. Conclusions of law are presented for resolution, but no questions of fact have been so raised. As the City has moved to dismiss the complaint for legal insufficiency and affidavits have been submitted by both parties, the court may, if warranted, render summary judgment. (CPLR 3211, subd. [c].)
The City asserts that the Raceway must exhaust its administrative remedies and is therefore barred from prosecuting this action for a declaratory judgment. Section 92-8 of the Yonkers Code purportedly mandates such as an exclusive remedy to the Raceway. The court rejects this claim. Raceway bases its action upon the proposition that the attempt to tax parking revenues is illegal and unconstitutional as the State enabling statutes do not empower the City to exact such taxes. No useful purpose would be served, and certainly the Raceway would be seriously prejudiced, by subjecting the Raceway to a lengthy and costly administrative proceeding before the City Comptroller as a predicate to any court review, especially here where the Comptroller is seeking records back to 1952 and the *593 deposit of a large sum of money to be held by the City without payment of interest thereon as a condition to commencement of an article 78 proceeding to review (Code, §§ 92-6, 92-7). An action for a declaratory judgment is proper despite the exclusivity section of the taxing statute. (Richfield Oil Corp. v. City of Syracuse, 287 N.Y. 234, 239 ; Dun & Bradstreet v. City of New York, 276 N. Y. 198 ; New York Tel. Co. v. City of New York, N. Y. L. J., June 24, 1948, p. 2376, col. 6 [Null, J.] ; Barr & Lane v. City of New York, N. Y. L. J., Jan. 7, 1948, p. 67, col. 2 [Walter, J.].) (Cf. Olive Coat Co. v. City of New York, 283 N. Y. 733 ; Children’s Bus Serv. v. City of New York, 272 App. Div. 1058 ; All Amer. Bus Lines v. City of New York, 268 App. Div. 508.) The facts in the instant case clearly warrant the intervention of the judiciary at this stage.
The imposition of any tax must be strictly construed in favor of the taxpayer. (Matter of Grumman Aircraft Eng. Corp. v. Board of Assessors of Town of Riverhead, 2 N Y 2d 500 ; America Locker Co. v. City of New York, 308 N.Y. 264 ; Matter of Holmes Elec. Protective Co. v. McGoldrick, 262 App. Div. 514, affd. 288 N. Y. 635.) The State amendment to the enabling act in 1954 clearly excludes taxation of parking revenues. There is no ambiguity present. This judicial conclusion is buttressed by the interpretation placed upon the word “ admissions ” by the various taxing authorities over the years. The interpretation now proposed by the City is outside the orbit of the taxing statute and illogical. Local Law No. 2 of 1965 refers to a “ general admission price ’ \ Taxation of Raceway beyond this level for city revenue was simply not intended in the legislative grant.
No purpose will be served by a trial. No question of fact exists. The court, upon these papers grants summary judgment declaring that these revenues derived by the Raceway from parking are not taxable by the City; that there is no authority in the Comptroller or City to levy or seek to levy a local tax on this form of income. The subpoena duces tecum is quashed. The motion to dismiss is denied.