John T. Casey, J.
Two proceedings instituted against the State Tax Commission question whether the sale of cable television services is subject to sales and use taxes imposed under article 28 of the Tax Law. One proceeding, styled as a class action, is brought under CPLR article 78 by and on behalf of subscribers to cable television services. The other proceeding is an action for a declaratory judgment instituted by the New York State Cable Television Association and several cable television companies. In the action for a declaratory judgment both sides have moved for summary judgment.
On June 1, 1976 the State Tax Commission determined that cable television activities fell within the definition of telephony and telegraphy within the meaning of subdivision (b) of section 1105 of the Tax Law and thus decided administratively that receipts from the sale of cable television services were subject to the sales and use taxes. Since June 1, 1976 cable television companies have been required to collect from subscribers and pay over the State and local sales taxes upon the sale of cable television services.
Section 1105 of the Tax Law provides, in pertinent part: "On and after June first, nineteen hundred seventy-one, there is hereby imposed and there shall be paid a tax of four percent upon * * * (b) The receipts from every sale, other than sales for resale, of * * * telephony and telegraphy and telephone and telegraph service of whatever nature”. The issue is, therefore, whether cable television may be characterized for the purpose of subdivision (b) of section 1105 as telephony and telegraphy. Resolution of that issue necessarily involves an examination of the cable television operation.
*603 Cable television, or CATV, is a system of transmitting the television broadcast signal. The classic cable television system consists of a tall master antenna, trunk lines, feeder lines and drop lines. The antenna receives various broadcast signals which are then processed and prepared for transmission by processing equipment located in a control station at the foot of the tower. At the control station, headend, the signal is brought up to maximum strength and clarity. The processed signal is then transmitted through large coaxial cables (trunk lines) connected to the headend. Branching off the trunk lines are smaller cables known as feeder lines and even smaller cables called drop lines. The processed signal is transmitted through the trunk, feeder and drop lines to the individual subscriber’s television set. Subscribers pay an installation charge to have their set hooked to the system, and thereafter pay a monthly service charge. In addition to receiving and transmitting the broadcast signal of another, some cable television companies are originating television programs on their own. The principal advantages of the cable television system over the conventional over-the-air system of transmitting television signals are that the cable system provides more and better broadcast signals and that the cable system has much more potential for providing additional services to subscribers.*
In the present case, the papers presented indicate that cable companies involved furnish their subscribers with a variety of television programming. Generally, they provide: locally broadcast VHF and UHF television programs ordinarily available to the subscriber from its own antenna; programs originating from VHF and UHF broadcasters at distant points and transmitted via a cable television system (programs that could not ordinarily be received by local subscribers without the cable television system); original programming not available from VHF and UHF broadcasters, which is produced or originated by the cable television company from independent sources; programs produced by local groups and organizations including government and local institutions.
*604 In determining whether a cable television company is engaged in the service of telephony or telegraphy one must focus on the nature of the service provided and not whether as an incident of providing that service there is a telegraphic or telephonic transmission of a signal. Thus, in Matter of Holmes Elec. Protective Co. v McGoldrick (262 App Div 514, affd 288 NY 635) receipts from the sale of a burglar protective service were held to be receipts from the sale of something other than telephony or telegraphy and thus immune from the New York City sales tax, even though as an incident of that service an electric signal was transmitted in a telegraphic manner from the premises of the customer to an office of the corporation providing the protective service. In essence, the court held that the customer was purchasing a protective service and not a means of communication that could be characterized as telephony or telegraphy. Moreover, the legal incidence the sales and use taxes imposed under article 28 of the New York State Tax Law is imposed upon the purchaser. (See, e.g., Agricultural Bank v Tax Comm., 392 US 339.) It makes sense, therefore, to focus upon the complete package or item purchased by an individual in order to determine whether he must pay a sales tax upon the purchase of that item.
At this stage of the development of cable television, as set forth in the papers presented, it is clear that the cable television subscriber is not purchasing telephony or telegraphy. Instead, he is purchasing entertainment or enjoyment, and the purchase of such a service or item is not subject to the sales tax. (Cf. Bathrick Enterprises v Murphy, 27 AD2d 215, affd 23 NY2d 664.)
In Matter of Hospital Tel. Systems v New York State Tax Comm. (44 AD2d 271), the Appellate Division, Third Department, unanimously reversing the trial court, held that receipts from coin-operated television sets supplied to hospitals were not subject to sales tax. The court held that such endeavors were not subject to sales tax as retail sales and did not constitute one of the services specified in section 1105 of the Tax Law. If this court were to adopt the reasoning of the State Tax Commission in the present case, an anomalous situation would result. Specifically, a subscriber to a cable television system would be subject to the sales tax on his service charge, but a person who utilizes a coin-operated system would not be subject to the sales tax. There is no appreciable difference in the service purchased by each indi *605 vidual, only the manner in which the television signal is transmitted is different. It would be incongruous to conclude that the Legislature and the courts elected to impose a sales tax in one case and not in the other.
Finally, two procedural items need mention. First, as to the action instituted by subscribers to cable television services, such action is not a proper subject for a class action and thus class action relief is unnecessary. (Matter of Ceracche Tel. Corp. v Kelly, 50 AD2d 134.) Secondly, the effect of the order herein is stayed pending appeal of this decision by the administrative body or until the time within which to appeal this decision has expired.
The determination made by the Tax Commission herein is declared arbitrary and capricious since it has no statutory basis.

 For a more complete discussion of cable television systems see Sloan Commission on Cable Communications; On the Cable: The Television of Abundance, McGraw-Hill Book Company; Christensen, Current Developments in CATV, Practicing Law Institute; Hollowell, Cable Handbook, Communications Press, Inc.; Smith, The Wired Nation, Nation Vol 210, No. 19, May 18, 1970; 2 Yale Rev of Law and Social Action, The Cable Fable.