Fold, J.
On an October afternoon in the year 1953, defendant, a state trooper, and a fellow officer, both in uniform and in a car prominently marked “ State Police,” were engaged in patrolling Route 11 in up-state New York. At about two o’clock, they observed plaintiff’s automobile proceeding at a high speed, “ clocked ” it at from 70 to 75 miles an hour on a portion of the highway having a 50-mile speed limit and, after following for two miles, stopped the vehicle and relieved plaintiff of his driver’s license and registration. Defendant, not answering plaintiff’s query, “ What did I do wrong? ”, directed plaintiff, “ Just follow me to the judge ”. Plaintiff did so and, in the presence of the justice of the peace, to whose house they drove, defendant prepared and filed an information, charging plaintiff with speeding in violation of section 56, subdivision 3, of the Vehicle and Traffic Law.[1] He pleaded not guilty to the information, the case was postponed and a week later he was tried. Both defendant and the other trooper testified at the trial that plaintiff had been driving upwards of 70 miles an hour and plaintiff himself admitted that he had exceeded the speed limit. He was adjudged guilty and fined $50.
This action for false arrest, in which plaintiff sought damages of $10,000, followed. After a fairly brief trial, the judge, concluding that the defendant was guilty of an illegal arrest because he had failed to inform plaintiff of the cause of the arrest, instructed the jurors that they were to concern themselves solely with the matter of damages. The jury returned a verdict of $600, and the Appellate Division, by a three to two vote, affirmed the resulting judgment.
*474 Defendant’s conduct may have been irritating, even assuming that plaintiff did not know that he was speeding at upwards of 70 miles an hour, hut his silence, whether ascribable to officiousness or discourtesy or lack of attention, does not justify a charge of false arrest.
Chapter IV of title III, in part IV of the Code of Criminal Procedure, deals with “ arrest by an officer, without a warrant.” Section 177, setting forth the cases in which such an arrest is permitted, reads as follows:
‘ ‘ A peace officer may, without a warrant, arrest a person,
“ 1. For a crime, committed or attempted in his presence;
“ 2. When the person arrested has committed a felony, although not in his presence;
‘ ‘ 3. When a felony has in fact been committed, and he has reasonable cause for believing the person to be arrested to have committed it.” (Emphasis supplied.)
And section 180, complementing section 177, provides that,
‘ ‘ When arresting a person without a warrant the officer must inform him of the authority of the officer and the cause of the arrest, except when the person arrested is in the actual commission of a crime or is pursued immediately after an escape.” (Emphasis supplied.)
This exception, highly logical, was inserted for a very good reason. When a person is apprehended [1] ‘ in the actual commission ” of a crime, there is, of course, no need to acquaint him with the cause of his arrest. The reasonable and necessary assumption, and the assumption on the basis of which the Legislature undoubtedly acted, is that the offender caught in the act is fully aware of what he is doing and why he is being taken into custody.
Thus, the Legislature has declared, in language quite plain, that a peace officer may arrest without a warrant and without the necessity of stating the cause of the arrest, if the offender was apprehended in the actual commission of a crime. Plaintiff attempts to avoid the force of this language by urging that the act for which he was arrested is not a “ crime ” within the meaning, of these statutory provisions. Two contentions are advanced: first, that the word “ crime ” in section 180 denotes *475 only a felony and no lower category of crime, because the heading of that section refers to the commission of a “ felony ” and, second, that, in any event, speeding is denominated a “ traffic infraction ” rather than a crime by the Vehicle and Traffic Law (§ 2, subd. 29). Neither contention can stand analysis.
The heading to section 180, it is true, mentions only a “ felony it reads, “ Must state his authority, and cause of arrest, except where party is committing felony or is pursued after escape.” The text of the statute, however, broadly and unqualifiedly provides that the exception applies ‘ ‘ when the person arrested is in the actual commission of a crime, or is pursued immediately after an escape.”
Whatever the reason for the discrepancy, be it legislative oversight or scrivener’s error, there can be no doubt that the text of the statute must take precedence over its title. While a title or heading may help clarify or point the meaning of an imprecise or dubious provision, it may not alter or limit the effect of unambiguous language in the body of the statute itself. (See People v. O'Brien, 111 N. Y. 1, 59-60; Bell v. Mayor of City of New York, 105 N. Y. 139, 144; Matter of New York & Brooklyn Bridge, 72 N. Y. 527, 532; People v. Molyneux, 40 N. Y. 113, 119, 122; People v. McCann, 16 N. Y. 58; People v. O'Neil, 280 App. Div. 145,146.) “ The character of a statute ”, we have written, ‘1 is to be determined by its provisions, and not by its title ”. (People v. O'Brien, supra, 111 N. Y. 1, 59.)
There is no ambiguity in the Legislature’s use of the word “ crime ” in the text of section 180. The section is part of a comprehensive statutory scheme governing arrests, in which the distinction between felonies and crimes, in general, plays an important part and is carefully preserved throughout. (See, e.g., Code Grim. Pro., §§ 158, 159, 170, 177, 179, 183.) Section 177, for example, authorizes a peace officer to arrest without a warrant for any crime, if it is committed in his presence (subd. 1), but only for a felony, if not committed in his presence (subds. 2, 3). And in section 180, dispensing with the need for stating the cause of the arrest in the former case, the conclusion is inescapable that the word “ crime ” was again used deliberately and advisedly to denote all types of crime rather tba.n felonies alone. Indeed, if section 180 were to be read, as urged, to cover only felonies, the result, most anomalously, would be that a private citizen’s power of arrest, as defined by sections 183 *476 and 184. of the Code, would he greater than that of a peace officer. The latter provisions are in language and substance similar to sections 177 and 180 and, in dealing with the need to state the cause of the arrest, section 184, like section 180, excepts an arrest made “ in the actual commission of the crime ”. The heading of section 184, however, unlike that of section 180, does not contain the word ‘ ‘ felony ’ ’ to distract from its text[2] and, accordingly, no one would suggest that the word “ crime ” in that section means anything other, or less, than “ crime.” The Legislature could not conceivably have intended that the same word cover only felonies in section 180, and that the peace officer’s authority should be more narrowly circumscribed than that of a private citizen.
The other argument advanced is that the Code. provisions are inapplicable, and authority for the arrest lacking, merely because speeding is labeled a “ traffic infraction ” rather than a “ crime ” (Vehicle and Traffic Law, § 2, subd. 29). This contention, as already noted, is equally unavailing.
We may not simply say that a “ traffic infraction ” is not a “ crime,” and that that is the end of the matter. We must look to the statute — subdivision 29 of section 2 of the Vehicle and Traffic Law — which so declares and seek the object or purpose underlying that legislative pronouncement. It was, as the governor observed when he approved the bill enacting the provision into law, to “ establish a new type of crime,” with the stigma of criminality removed. (1934 Public Papers of Governor Herbert H. Lehman, p. 345.) Thus, while certain of the eonsequencés which attach to conviction of a crime were eliminated,[3] the Legislature made it clear that such “infractions” were to be “ deemed misdemeanors ” for other purposes (Vehicle and *477 Traffic Law, § 2, subd. 29); this is the concluding sentence of subdivision 29:
“ Courts and judicial officers heretofore exercising jurisdiction over such acts and violations [of the traffic laws] as misdemeanors or otherwise shall continue to exercise jurisdiction over traffic infractions as herein defined, and for such purpose such acts and violations shall he deemed misdemeanors and all provisions of law relating to misdemeanors * * * except as herein otherwise expressly provided shall apply to traffic infractions, except however, that no jury trial shall be allowed for traffic infractions.” (Emphasis supplied.)
This constituted a legislative declaration that traffic infractions were to be treated as misdemeanors as far as the procedure for their prosecution was concerned. To suggest that such infractions were to be treated otherwise in the necessary steps preceding trial, that is, in connection with an arrest, would be highly unreasonable. It would be, in the words of County Court Judge Schmidt (as he then was), “ inconsistent, fraught with practical difficulties and would defeat the apparent purpose of the Legislature in providing an orderly and consistent procedure for punishment of violators of the Vehicle and Traffic Law and duly adopted ‘ speeding ordinances ’ of municipalities.” (People v. Space, 182 Misc. 783, 785.)
In point of fact, if plaintiff and the courts below were correct in holding that traffic infractions are not “ crimes ” under section 180 of the Code, it would follow that they are not crimes within the meaning of any of the Code provisions governing arrest.. The Vehicle and Traffic Law contains only a general grant of power to the state police to make arrests for traffic infractions (Vehicle and Traffic Law, § 68, subd. 1) and, consequently, if the Code provisions dealing with arrest were inapplicable, this power would exist in a void. It would be completely undefined and unregulated by the rules and procedures carefully outlined by the Legislature to govern arrests, such as those dealing with the form and requirements of a valid summons or warrant (Code Crim. Pro., §§ 150-153), prompt arraignment (§§ 164—165), bail (§§ 159—161) and the degree of *478 force or restraint that the officer may exercise (§§ 172,174,176).
One consequence, of adopting plaintiff’s view and affirming herein, would be that a peace officer could never make an arrest for a traffic infraction without a warrant, pursuant to section 177, even if the offense were committed in his presence. In other words, if the word “ crime ” in section 180 were to be construed, in a technical and narrow sense, to denote only a ‘ ‘ felony ” or a “ misdemeanor ’ ’ and to exclude the traffic infraction of speeding, then it must be similarly construed in section 177, with the result that the arrest would be unlawful without a warrant. And that would be so even though the officer informed the offender of the reason for the arrest. Before an officer would be privileged to take the offender into custody, he would have to find a magistrate, perhaps miles away, and obtain a warrant of arrest, a consequence that not only would hamper prompt and effective enforcement but would favor nonresidents over residents of the state without basis or reason. “ Citizens of this State who could be brought into court upon warrants would answer for their violations ”, while “ nonresidents, leaving the State before a warrant could be obtained and an arrest made, would in many cases escape even a trial for their offenses.” (People v. Space, supra, 182 Misc. 783, 785.) Since the Legislature’s purpose in denominating a traffic law violation an “ infraction ” was solely to prevent the offender’s being adjudged and treated as a “ criminal,” it could hardly have intended results so unjust and disruptive of the orderly administration of the traffic laws. And that, as earlier indicated, is borne out by a reading of subdivision 29 of section 2 of the Vehicle and Traffic Law in its entirety.[4]
In sum, then, one in the actual perpetration of an offense, and it matters not whether it is a felony, a misdemeanor or the *479 infraction of speeding, is aware of what he is doing and, to paraphrase section 180, as long as the peace officer apprehends him in its actual commission, he need not state the obvious and tell the offender the reason for the arrest.
In view of the charge that there has been a “ gross * * * violation of a citizen’s rights ” (opinion of Desmond, J., dissenting, p. 479), it may not be amiss to hark back to the facts before us. Observing plaintiff motoring along at a great speed, defendant, in trooper’s garb and car, followed him for several miles and, after ascertaining that plaintiff was traveling at a highly excessive rate, motioned him off the road, requested him to follow him to the judge, led him immediately and directly to a justice of the peace and there charged him by written information with a violation of the speeding provisions of the Vehicle and Traffic Law; then, after plaintiff had pleaded not guilty, the judge put off the case for a week and on the adjourned day plaintiff, represented by counsel, was found guilty after trial. This court has ever been alert to condemn impermissible police action and unlawful arrest (see People v. Cherry, 307 N. Y. 308; Snead v. Bonnoil, 166 N. Y. 325), but we fail to perceive in the circumstances or events of this case any basis whatsoever for the claim that there was the slightest infringement or curtailment of plaintiff’s rights or liberties.
However, having in mind how simple it would be for an officer to tell an offender that he is arresting him for speeding, we suggest that a regard for the sensibilities of the motoring public, not to mention a sense of public relations, should dictate adoption of a rule or regulation by state and local police departments requiring their members to advise the offending motorist of the cause of the arrest. This, though, is a matter of police administration, for, as we have already demonstrated, the applicable provisions of law impose no such requirement in any case in which the officer actually catches the operator of the vehicle in the act.
The judgment appealed from should be reversed and the complaint dismissed, with costs in all courts.

. According to plaintiff, an hour passed between the time he was stopped and the time he left the home of the justice of the peace.

. The heading refers to the commission of the “ offense,” rather than crime or felony, which incidentally serves to illustrate the imprecision of the headings as contrasted with the careful and consistent choice of terms in the body of the provisions.

. For instance, the statute recites that “ the penalty or punishment imposed therefor shall not be deemed for any purpose a penal or criminal penalty or punishment, and shall not affect or impair the credibility as a witness, or otherwise, of any person convicted thereof” ("Vehicle and Traffic Law, § 2, subd. 29).

. Indeed, the Legislature has regarded violations of the traffic laws and arrest of the offenders of such importance that it has empowered peace officers to arrest certain violators without a warrant even though the violations were not committed in their presence. For example, subdivision 5-e of section 70 of the Vehicle and Traffic Law provides that “A peace officer may, without a warrant, arrest a person v for certain violations — two of them misdemeanors and one a traffic infraction — “ which in fact have been committed, though not in his presence, when he has reasonable cause to believe that the violation was committed by such person ”. (Emphasis supplied.)