Jasen, J.
In this action Quotron Systems, Inc., seeks a declaration that it is not subject to the tax imposed under section -186-a of the Tax Law upon businesses furnishing utility services.
Quotron is in the business of designing, manufacturing, installing and maintaining electronic equipment for the instantaneous transmission of stock market information to its customers, most of whom are brokerage houses, banks, and other commercial institutions. It has contracts with the major stock and commodity exchanges under which they supply continuous stock information over ticker tape lines and wires to Quotron’s computer, in New York City. In Quotron’s main system, its customers are supplied with desk units which consist of a keyboard, together with either a tape or visual display, or both. The customer, by entering a symbol for a security and punching a function key, may request stock information such as last price, high, low, bid, ask, open and close. The customer’s request is transmitted to the computer center over telegraph and telephone lines leased from Western Union and the American Telephone and Telegraph Company. Upon receipt of the inquiry, the computer transmits the requested information over the same leased lines to the customer’s desk unit.
In addition to the instantaneous market transaction data which is fed directly to the computer by ticker lines, employees at Quotron’s computer center also receive various financial publications and other sources of information to obtain data about dividends, earnings, and the like. This information is entered into the computer’s memory after the conclusion of the market day, and is also available for transmission to customers on request.
On this appeal the sole issue is whether Quotron was properly characterized by the Tax Commission as one who sells "telegraphy” or furnishes "telegraph service”, and is hence a utility within the meaning of section 186-a of the Tax Law. So far as is pertinent here, subdivision 2 (par [a]) of that section defines utility as follows: "[T]he word 'utility’ includes every person subject to the supervision of the state department of public service * * * and also includes every person (whether or not such a person is subject to such supervision) *431 who sells gas, electricity, steam, water, refrigeration, telephony or telegraphy, delivered through mains, pipes or wires, or furnishes gas, electric, steam, water, refrigerator, telephone or telegraph service, by means of mains, pipes, or wires”. Since Quotron is not subject to the supervision of the Public Service Commission, it can be taxed as a utility only if it "sells * * * telegraphy * * * or furnishes * * * telegraph service”.
Unfortunately the statute defines neither "telegraphy” nor "telegraphic service”. In the absence of such statutory definition, the meaning ascribed to a word or phrase by the lexicographers may serve as a useful guidepost. (McKinney’s Cons Law of NY, Book 1, Statutes, § 234.) Webster’s New World Dictionary, for example, defines "telegraphy” as the "transmission of messages by telegraph”. Equally instructive in this case is the Legislature’s own declaration of its intent. Section 186-a was originally enacted in 1937 as a temporary measure. (L 1937, ch 321.) The definition of "utility” in the present section, at least insofar as telegraphy is concerned, is identical to that contained in the 1937 statute. In re-enacting • the statute in 1941, the following statement was included in the portion of the enactment entitled "Declaration of legislative intent”: "[t]he [1937] law defined a utility, for the purposes of the tax, as including every person subject to the supervision of the department of public service and every other person furnishing utility services. It was intended to include persons and corporations which were directly in competition with ordinary utilities, such as, landlords and submeterers, who buy their services from other utilities and, in turn, resell such services.” (L 1941, ch 137, § 1.)*
In light of the dictionary definition, which focuses on "transmission”, the declaration of legislative intent, which is concerned with "competition with ordinary utilities”, and the well-established rule of construction that ambiguities in tax statutes are to be construed most strongly in favor of the taxpayer and against the government (American Locker Co. v City of New York, 308 NY 264, 269; Matter of Holmes Elec. Protective Co. v McGoldrick, 262 App Div 514, 520, affd without opn 288 NY 635), we conclude that Quotron neither sells telegraphy nor furnishes telegraphic services within the meaning of section 186-a of the Tax Law. While transmission *432 of information is certainly an integral aspect of Quotron’s business, its transmissions cannot be likened to those made by an ordinary telegraph company. It is common knowledge that a telegraph company normally functions as a mere conduit, transmitting to third-party recipients messages given it by various originators. Here Quotron is more than a mere conduit. It contracts with the major stock and commodity exchanges which continuously send it data concerning every transaction made, data which Quotron then stores in its computer. Quotron also distills information from various publications and other sources of information, again storing this material in its computer. This information, once compiled by Quotron, is then transmitted upon request of its customers. By performing this service Quotron cannot be said to be "directly in competition with ordinary [telegraph companies]” and therefore is not a "utility” as defined by section 186-a of the Tax Law.
In. urging an affirmance here, the Tax Commission relies principally upon Matter of New York Quotation Co. v Bragalini (7 AD2d 586, mot for lv to app den 7 NY2d 706) and Matter of Teleregister Corp. v Beame (18 AD2d 631, affd without opn 13 NY2d 834). However, since each of those cases presented situations factually different from this, we conclude that neither case warrants a determination that this tax was validly imposed.
In New York Quotation the company being taxed as a utility did nothing more than furnish a stock ticker service with respect to transactions consummated on the New York Stock Exchange. The record in that case indicates that after each transaction on the trading floor of the Exchange, a "reporter” (an employee of the Exchange) would obtain from the selling broker the name of the security sold, the number of shares, and the price. This information was then given to other Exchange employees who transferred it onto a perforated paper tape. This tape was then fed into a transmitter which produced electrical impulses and sent these impulses onto wires operated by the New York Quotation Company, which in turn relayed the impulses to its customers. A receiving unit—a ticker—in each subscriber’s office then converted the impulses into corresponding letters and numbers which were printed onto a ticker tape. Thus the New York Stock . Exchange, and not the New York Quotation Company, pre *433 pared and supplied the market information, with the latter serving merely as a conduit or transmitter of the information to its customers. The fact that the New York Quotation Company did not in any sense compile the information which it ultimately transmitted suggests that it could be considered to have been "directly in competition with ordinary [telegraph companies]”.
Matter of Teleregister Corp. v Beame (supra), which involved a nearly identical New York City tax provision, presented a factual situation somewhat more similar to the case before us. The Teleregister Corporation maintained an electric stock quotation board in the office of each customer. This board would display the open, high, low, close and last prices of the stocks, bonds and commodities selected by the customer from one or more stock exchanges. Teleregister’s employees received this information over various tickers in its offices, edited it, and sent it, in the form of electrical impulses, over telephone and telegraph wires, to the boards in its customers’ offices, which then displayed the information in numerical form. In a sense Teleregister did act as both the originator and transmitter of data, as does Quotron. However, its operation bore a greater degree of similarity to that of New York Quotation than to Quotron’s in at least one very important regard, namely, that it merely stored and transmitted raw market data. Quotron, on the other hand, not only stores and transmits such data, but it also makes available information concerning the past performance of each security as well as other relevant information culled from financial publications. Nevertheless, if there remains a conflict between these cases, we prefer the analysis in this case.
Accordingly, the order of the Appellate Division should be reversed and judgment entered declaring that section 186-a of the Tax Law is not applicable to Quotron’s business or the revenues derived therefrom.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order reversed, with costs, and case remitted to Supreme Court, New York County, for the entry of judgment in favor of plaintiff in accordance with the opinion herein.

 This declaration of intent was apparently added to circumvent the holding by this court in 1940 that landlords and submeterers were not taxable as utilities under section 186-a of the Tax Law. (Matter of 339 Cent. Park West v Graves, 284 NY 691.)