■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. RICHARD J. ARCARA, as District Attorney of Erie County, Appellant, v CLOUD BOOKS, INC., Doing Business as VILLAGE BOOKS AND NEWS STORE, et al., Respondents. — Order affirmed, without costs. Concur — Dillon, P. J., Doerr, Denman and Green, JJ.

Moule, J., dissents and votes to reverse and grant the application for preliminary injunction in an opinion. The question presented on this appeal is whether a preliminary injunction may issue in an action brought to enjoin a nuisance under common-law or title II of article 23 of the Public Health Law. The Erie County District Attorney's office conducted an undercover investigation into activities occurring on defendants'[1] premises, The Village Book & News Store, located at 3102 Delaware Avenue in the Village of Kenmore, New York. This store sells books, magazines and novelties of a sexually frank

---

1. All future reference will be to "defendant", Cloud Books, Inc. Although not taking any part in this appeal, defendant Ottaviano, as owner of the premises, remains a party (Public Health Law, § 2320, subd 1).

nature and contains coin-operated movie machines which show explicit sexual material. The investigation was conducted by an undercover officer of the Erie County Sheriff's Department who visited the premises at various times between September 13 and October 1, 1982. In the course of the investigation, the officer personally observed various acts of sexual behavior occurring on the premises. In an affidavit describing the acts alleged to have occurred, he stated that on four separate occasions, he observed patrons masturbating in the coin-operated picture booths; that on five separate occasions he was solicited for acts of oral sodomy and on three of these occasions he was offered money for the performance of such acts; that he observed an act of fellatio occurring between two males while standing behind the row of coin-operated machines; that he observed in the area of the coin-operated machines a female patron fondling a male person; that he observed minors at the premises and, in one instance, the sale of a mechanical sexual device to a minor; and that he was offered marihuana and an unidentified intoxicating substance by patrons of the premises. He also stated that he discussed the acts of masturbation and solicitation with employees of the store, and that they were unconcerned about them even though fully aware of such occurrences. Subsequent to the investigation, the District Attorney brought a suit on behalf of the People alleging the foregoing acts and setting forth two causes of action. One was to abate a nuisance at common law and the other was to enjoin and abate acts of lewdness, assignation or prostitution as provided under title II of article 23 of the Public Health Law. In its answer, defendant denied having knowledge of or allowing the occurrence of any sexual activity and denied all other allegations concerning solicitation, minors and drugs. It also stated that its employees were required to maintain a strictly enforced policy of disallowing any such activity and that, even if proven, the acts alleged were indiscretions committed by unknown patrons. In addition to seeking a permanent injunction, the complaint also seeks a temporary restraining order and a preliminary injunction. Special Term issued an order to show cause why a preliminary injunction should not be granted and set a return date. It did not grant a temporary restraining order. This appeal stems from the trial court's denial of the plaintiff's application for a preliminary injunction. Plaintiff contends that title II of article 23 of the Public Health Law provides the procedural mechanism to abate a nuisance. Section 2320 provides: "1. Whoever shall erect, establish, continue, maintain, use, own or lease any building, erection, or place used for the purpose of lewdness, assignation, or prostitution is guilty of maintaining a nuisance. 2. The building, erection, or place, or the ground itself, in or upon which any lewdness, assignation, or prostitution is conducted, permitted, or carried on, continued, or exists, and the furniture, fixtures, musical instruments, and movable property used in conducting or maintaining such nuisance, are hereby declared to be a nuisance and shall be enjoined and abated as hereafter provided." Defendant argues and Special Term agreed that this statute is inapplicable to a bookstore because it is aimed at houses of prostitution as evidenced by its title, "Houses of Prostitution", and specifically refers to a "place used for the purpose of lewdness, assignation, or prostitution" (§ 2320, subd 1; see Commissioner of Dept. of Bldgs. of City of N. Y. v Sidne Enterprises, 90 Misc 2d 386). Additionally, defendant argues that the case law interpreting the statute has limited its application to businesses conducted solely for the purposes of prostitution. It argues that a bookstore is not used for these purposes but, rather, is a business devoted to the sale of books, magazines and novelties. The statutory language to which defendant cites falls under subdivision 1 of the statute which refers to persons "guilty of maintaining a nuisance". Subdivision 2, which defines "nuisance", does not contain language requiring that the premises be used "for the purpose of" lewdness, assignation, or

prostitution; it merely states that the building or ground, etc., upon which "any [such activity] is conducted, permitted, or carried on, continued, or exists" constitutes a nuisance. Additionally, even under subdivision 1, "for the purpose of" does not require that those activities constitute the sole or primary purpose of the establishment. Accordingly, the fact that the primary purpose of the store is to sell books does not preclude the application of title II of article 23 to defendant store wherein it appears that "any" lewdness, assignation, or prostitution occurs on the premises. Defendant's argument that the title of the act limits its application to houses of prostitution is without merit. While a title 'or heading may help clarify an imprecise provision, it may not alter or limit the content of the body of the statute; the substance of a statute is determined by its provisions and not by its title (*Squadrito v Griebsch,* 1 NY2d 471; see, also, McKinney's Cons Laws of NY, Book 1, Statutes, § 13). The provisions of title II of article 23 are sufficiently broad to include premises other than houses of prostitution. The statute is directed at "any building, erection, or place used for the purpose of lewdness, assignation, or prostitution" (§ 2320, subd 1). The use of the disjunctive term "or" indicates that the statute is not aimed even solely at prostitution, much less houses of prostitution. The cases cited by defendant do not expressly limit the application of the statute to businesses conducted solely for the purpose of prostitution. *People v Macbeth Realty Co.* (63 AD2d 908) modified an order which directed that a hotel be closed and vacated under title II of article 23 of the Public Health Law and other relevant Administrative Code of the City of New York provisions. The court (p 909) limited the closing order to "two rooms allegedly used for prostitution" and "any other rooms which are now vacant or may become vacant during the pendency of this action". It did not limit the order to those rooms solely devoted to prostitution since it included vacant rooms in its modification. The court was concerned that closing the entire hotel would be a hardship on those tenants who used the hotel as their home. Rather than supporting defendant's limited reading of title II of article 23, *Macbeth* supports a broader interpretation since the statute was applied against premises which were not used primarily or solely "for the purpose of lewdness, assignation, or prostitution". Additionally, the language in *People ex rel. Rudd v Rizzo* (146 Misc 675), referring to property "devoted" to an unlawful use, has no application to these facts since that case involved a house of prostitution, and the court was merely emphasizing the legislative intent to eliminate such establishments. Concededly, this legislation was aimed at houses of prostitution (see *People ex rel. Lemon v Elmore,* 256 NY 489, 492-493) but that does not preclude the statute from being applied to premises where the conduct sought to be enjoined comes within the statutory definition of nuisance.[2] Accordingly,

---

2. Defendant also cites two cases from other jurisdictions to support its argument that this statute should be applied to premises used solely for purposes of prostitution (*People ex rel. Busch v Projection Room Theater,* 17 Cal 3d 42, cert den 429 US 922; *People v Goldman,* 7 Ill App 3d 253). In both instances, however, the statute was worded differently, with the entire section premised by the words "used for the purposes of lewdness, assignation, or prostitution". Subdivision 2 of section 2320 of the Public Health Law is worded more broadly. Additionally, the actions sought to enjoin the exhibition and sale of obscene materials, rather than to enjoin conduct occurring on the premises. Furthermore, when faced with similar situations, two other jurisdictions applied nuisance statutes to enjoin conduct prescribed by the statute. In *State ex rel. Wayne County Prosecuting Attorney v Levenburg* (406 Mich 455), the Supreme Court of Michigan held that proof that numerous instances of accosting and soliciting for purposes of prostitution at a bar was sufficient to sustain a finding that the bar constituted a public nuisance subject to abatement. Similarly, in *People v Mitchell* (64 Cal App 3d 336), the Court of Appeals, Second District, found the California Red Light Abatement Law applicable to enjoin lewd acts of theatre patrons but reversed the order granting the preliminary injunction as overbroad because it had closed the theatre

title II of article 23 is available to abate acts of "lewdness, assignation, or prostitution" which are conducted, permitted, carried on, continued or exist on the premises of a bookstore and provides a procedure under which temporary and permanent injunctions may be granted. Now let us consider the question on which Special Term did not pass of whether a preliminary injunction should have been granted under the Public Health Law. Subdivision 4 of section 2321 provides that a temporary restraining order may issue without a hearing and without notice. This order shall fix a time of hearing for a preliminary injunction wherein plaintiff and defendant may submit additional proof by affidavits. If it appears that there is "probable proof of the maintenance of such nuisance", a preliminary injunction may be granted (Public Health. Law, § 2321, subd 5).[3] Title II of article 23 sets out a specific procedure for obtaining a preliminary injunction and defines the necessary showing which must be made before a preliminary injunction may be granted (Public Health Law, § 2321, subd 5; see *People v Macbeth Realty Co., supra*). The necessary showing of "probable proof" to obtain a preliminary injunction under the Public Health Law is less exacting than the requisite showing of (1) likelihood of success on the merits; (2) irreparable injury; and (3) that a balancing of equities favors the movant's position to obtain a preliminary injunction under common law (see *Gambar Enterprises v Kelly Servs.*, 69 AD2d 297; *Tucker v Toia*, 54 AD2d 322). Accordingly, the inquiry focuses solely on whether plaintiff has established "probable proof" of the maintenance of a nuisance. The court had before it the verified allegations of the complaint and answer and an affidavit by a member of the Erie County Sheriff's Department who had been assigned to conduct an undercover investigation of the bookstore. His affidavit sets forth his personal observation of acts of masturbation, oral sodomy, and solicitation of deviate sexual intercourse. These acts, if proven, fall within the commonly understood definition of "lewdness and assignation"[4] (see McKinney's Cons Laws of NY, Book 1, Statutes, §§ 94, 232). Defendant submitted two affidavits by its attorney in opposition to the motion. The affidavits, based upon an independent investigation by defendant's attorney and interviews with various employees, deny that any managerial employee had knowledge of or acquiesced in sexual activity. No affidavits by employees, management or patrons of the bookstore were submitted. Defendant's proof, consisting of

rather than merely restraining the use of the property as a place of lewdness or assignation.

3. Title II of article 23 further provides that the trial of the action for the permanent injunction is triable at the first term of Supreme Court (Public Health Law, § 2324, subd 1). If the existence of the nuisance is admitted or established, the court shall order the removal of all fixtures and movable property and direct its sale and shall also direct the closing of the building for a period of one year (Public Health Law, § 2329). The property may be released to the owner upon the filing of a bond in the full value of the property and upon the condition that the owner immediately abate the nuisance and prevent its reoccurrence within a one-year period (Public Health Law, § 2332, subd 1).

4. The statute does not define "lewdness" or "assignation". In the absence of statutory definition, the meaning ascribed to a word by the lexicographers may serve as a useful guidepost (McKinney's Cons Laws of NY, Book 1, Statutes, § 234; *Quotron Systems v Gallman*, 39 NY2d 428, 431). Webster's Third New International Dictionary (unabridged, 1961) defines "lewd" as "sexually unchaste or licentious: DISSOLUTE, LASCIVIOUS * * * suggestive of or tending to moral looseness: inciting to sensual desire or imagination" (see, also, *State ex rel. Wayne County Prosecuting Attorney v Levenburg*, 406 Mich 455, *supra*, wherein the term was found to encompass instances of accosting and soliciting for purposes of prostitution). It defines "assignation" as "an appointment of time and place for a meeting [especially] for illicit sexual relations" (see, also, *People v Mitchell*, 64 Cal App 3d 336, 340, *supra*, wherein public masturbation was considered lewd conduct).

denials by its attorneys, fails to effectively controvert plaintiff's allegations. Plaintiff has set forth "probable proof" of the maintenance of a nuisance and for the granting of a preliminary injunction. Defendant also contends that the issuance of a preliminary injunction would constitute a prior restraint in violation of its First Amendment rights. Defendant analogizes this action to those cases which involved attempts to regulate the dissemination of materials based upon their content (see, e.g., *Vance v Universal Amusement Co.*, 445 US 308; *Cosgrove v Cloud Books*, 83 AD2d 789). Here, plaintiff seeks only to enjoin specified illegal acts occurring on the premises which are wholly unrelated to the premises' use as a bookstore. A bookstore may not invoke the constitutional protections it enjoys as a medium for free expression to frustrate effective law enforcement and promote illegal activity. Since plaintiff is not attempting to control the content of the materials defendant offers for sale to the public, the relief sought would not constitute a prior restraint. Even if the granting of a preliminary injunction would incidentally affect the exercise of First Amendment rights, a sufficiently important governmental interest, unrelated to the suppression of free expression, may justify the imposition of such an incidental limitation. The standard for determining whether an incidental limitation is permissible was set forth by the United States Supreme Court in *United States v O'Brien* (391 US 367, 377): "[W]e think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." The relief sought in the instant case fully comports with these criteria. The power of the State to prohibit prostitution and public lewdness is unquestioned. Further, the State's interest in prohibiting the alleged illegalities being committed upon defendant's premises is unrelated to the suppression of free expression. Finally, the incidental restriction involved here is no greater than is essential to further the governmental interest involved; the preliminary injunction sought does not request closure of the premises, but only seeks cessation of unlawful conduct occurring thereat. Accordingly, I would reverse the order of Special Term and grant a preliminary injunction restraining defendants, Cloud Books, Inc., doing business as The Village Book & News Store and Charles A. Ottaviano, from maintaining a nuisance in violation of title II of article 23 of the Public Health Law. (Appeal from order of Supreme Court, Erie County, Broughton, J. — preliminary injunction.) Present — Dillon, P. J., Doerr, Denman, Green and Moule, JJ.