791 P.2d 1063

**STATE of Arizona, Appellee,**

v.

**Gregory W. BOUDETTE, Appellant.**

**No. 1 CA–CR 88–722.**

Court of Appeals of Arizona,
Division 1, Department D.

Jan. 9, 1990.

Review Denied June 19, 1990.

(1) Is A.R.S. § 28–1075(B) void for vagueness because it does not specify what evidence of identity, other than a driver's license, a driver may offer, and is therefore subject to arbitrary enforcement?

(2) Is A.R.S. § 28–1075(B) unconstitutional because it punishes people for exercising their right to remain silent during the investigation of a traffic offense?

(3) Is A.R.S. § 28–1074 unconstitutional because it empowers police officers to stop vehicles to investigate civil traffic violations, rather than for suspicion of criminal activity?

We agree with Boudette that part of A.R.S. § 28–1075(B) is unconstitutionally vague and therefore void. However, we disagree with him on the other two issues.

## FACTS

A Phoenix police officer stopped Boudette to cite him for allegedly turning left on a red arrow, in violation of A.R.S. § 28–645(A)(3)(a). When the officer asked Boudette for his driver's license, Boudette responded that he did not have one. The officer then asked Boudette for his name, but Boudette refused to identify himself. Upon the officer's threat of arrest, however, Boudette gave his name and, after additional questioning, also gave his date of birth. The officer then asked for Boudette's address, to help in identifying him. Boudette refused to divulge his address and said that the officer was asking him to confess without benefit of legal counsel. After Boudette again refused the information, he was arrested for failing to provide proof of identity as required by A.R.S. § 28–1075(B). The officer then ran Boudette's name through the police computer and discovered that Boudette's driver's license had been suspended.

Boudette was cited for failing to remain stopped for a red traffic signal, in violation of A.R.S. § 28–645(A)(3)(a), a civil traffic

Roderick G. McDougall, City Atty. by L. Michael Hamblin, Asst. City Prosecutor, Phoenix, for appellee.

Gregory W. Boudette, Rimrock, in pro. per.

GRANT, Chief Judge.

Appellant, Gregory W. Boudette, challenges the constitutionality[1] of two traffic-law-enforcement statutes, and raises three issues on appeal:

---

1. Boudette relies only on federal constitutional law. As a result, we do not address any state constitutional issues.

offense; driving on a suspended license, in violation of A.R.S. § 28–473(A), a class 1 misdemeanor; and failing to provide proof of identity, in violation of A.R.S. § 28–1075(B), a class 2 misdemeanor.

Boudette contested all three citations. Boudette sought to suppress his statements to the officer on the ground that they were coerced. The municipal court judge denied all of his motions. The court found Boudette responsible on the red-light violation and guilty of the other two traffic violations. At sentencing on December 3, 1987, the court fined Boudette $65 for failing to remain stopped at a red signal, $119 for failing to produce identification, and $411 for driving on a suspended license. The court denied Boudette's motion to vacate the judgment. Boudette appealed the convictions to the superior court, which affirmed all three.

## A.R.S. § 28–1075(B)

Boudette challenges A.R.S. § 28–1075(B) on grounds that the statute is unconstitutionally vague and that it punishes drivers for exercising their fifth amendment right against self-incrimination.

The statute states:

The operator of a motor vehicle who, after stopping as required by subsection A of this section, fails or refuses to exhibit his operator's or chauffeur's license as required by § 28–423 or an operator who is not licensed and who fails or refuses to provide evidence of his identity upon request is guilty of a class 2 misdemeanor.

### 1. Vagueness

The thrust of Part B of this statute is to penalize motorists who refuse to display their driver's licenses or, if they do not have licenses, who refuse to give other identifying information. Boudette argues that this provision in the statute is unconstitutional because it allows police officers to arbitrarily determine when unlicensed drivers have sufficiently identified themselves and because it fails to give drivers fair and adequate notice of what proof of identity suffices to comply with the statute.

The Attorney General of Arizona has interpreted "evidence of his identity" as requiring unlicensed drivers to produce the functional equivalent of a driver's license that would enable a law-enforcement officer or traffic agent to fill out the standardized Arizona traffic ticket and complaint. Ariz.Atty.Gen.Op. I88–016 (1988). This functional equivalent of a driver's license, according to the attorney general, must be a government-issued identification card that provides the officer or agent with information such as the driver's full name, residence, physical description, social security number and date of birth. *Id.* at 2, 3.

However, the Phoenix City Attorney, on behalf of the state, concedes that the statute is vague as it applies to unlicensed motorists, citing *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). In *Kolender,* the United States Supreme Court struck down a statute that allowed police officers to arrest people who loitered or wandered on the streets for failure to provide "credible and reliable" identification. *Id.* at 353–54, 103 S.Ct. at 1856, 75 L.Ed.2d at 906. The statute thus gave a police officer virtually complete discretion to determine whether the suspect provided sufficient identification. *Id.* at 358, 103 S.Ct. at 1858, 75 L.Ed.2d at 909. The Court concluded that the statute was unconstitutionally vague on its face because it encouraged arbitrary enforcement "by failing to describe with sufficient particularity what a suspect must do in order to satisfy the statute." *Id.* at 361, 103 S.Ct. at 1860, 75 L.Ed.2d at 911.

■ We agree that the part of A.R.S. § 28–1075(B) that requires unlicensed drivers or drivers without licenses in their possession to produce "evidence of ... identity" is unconstitutionally vague based on *Kolender.* The statute gives no notice of what type of identification, other than a driver's license, will suffice to avoid arrest and in failing to do so, the statute encourages arbitrary and discriminatory enforcement.

■ The part of the statute which is invalid is severable from the balance of the

statute. If an unconstitutional provision of a statute can be eliminated, leaving a complete statute the meaning and effect of which are not repugnant to the original law, the remainder of the act will stand. *Scottish Union & Nat'l Ins. Co. v. Phoenix Title & Trust Co.*, 28 Ariz. 22, 235 P. 137 (1925); *State v. Jones*, 142 Ariz. 302, 689 P.2d 561 (App.1984).

When A.R.S. § 28–1075(B) is read together with A.R.S. § 28–1075(C) it is clear that these provisions require three distinct groups of individuals—licensed operators, unlicensed operators, and passengers who may have committed a violation of the traffic code—to identify themselves to police officers. In all three cases a misdemeanor arises from failure to provide identification. Our holding today in no way limits law enforcement authorities' ability to prosecute unlicensed drivers for operating motor vehicles, as such persons will continue to be subject to prosecution under A.R.S. § 28–411(A).

We therefore hold that the part of A.R.S. § 28–1075(B) that declares a driver who fails or refuses to exhibit his license (as required by § 28–423) upon being stopped to be guilty of a class 2 misdemeanor is constitutional and may stand. However, that part that declares an unlicensed driver to be guilty of a misdemeanor for refusing to provide evidence of his identity is unconstitutionally vague and must fall.

2. Fifth Amendment

■ Boudette argues that A.R.S. § 28–1075(B) violates the fifth amendment privilege against self-incrimination by compelling a motorist to identify himself. This, he contends, forces the unlicensed driver to open his unlicensed status to ready discovery and thereby subject himself to prosecution under A.R.S. § 28–423[2] for driving without a license. We disagree.

The fifth amendment provides no privilege against giving one's name. In *California v. Byers*, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971), the United States Supreme Court upheld the validity of a California statute that required motorists involved in accidents to stop and give their names and addresses. The Court determined that "[d]isclosure of name and address is an essentially neutral act. Whatever the collateral consequences of disclosing name and address the statutory purpose is to implement the state police power to regulate use of motor vehicles." *Id.* at 432, 91 S.Ct. at 1540, 29 L.Ed.2d at 19. The Court noted that compliance with the statute could lead to prosecution for some contemporaneous criminal violation of the motor vehicle code, if one occurred, or an unrelated offense. *Id.* at 434, 91 S.Ct. at 1541, 29 L.Ed.2d at 20. This potential "collateral consequence" did not, however, support a fifth amendment privilege against disclosure of one's name. *Id.*

■ The right to use the public highways is not an unlimited right; it is always subject to reasonable regulation under the state's police power. *State v. Burns*, 121 Ariz. 471, 591 P.2d 563 (App.1979); *Woodhead v. Kansas Dep't of Rev.*, 13 Kan. App.2d 145, 765 P.2d 167 (1988). A driver's license is a statutorily mandated condition for operating a motor vehicle upon the public highways. We hold that the police reasonably demanded production of Boudette's driver's license in exercise of the state's police power to regulate the use of motor vehicles.

**AUTHORITY TO STOP MOTORISTS FOR CIVIL TRAFFIC VIOLATIONS**

■ Finally, Boudette argues that the officer had no authority to stop him for violating a civil traffic law. To lawfully stop a motorist, Boudette contends, police

---

**2.** A.R.S. § 28–423 states:

Every licensee shall have a legible operator's or chauffeur's license in his immediate possession at all times when operating a motor vehicle and shall display the license, upon demand by a justice of the peace, a police officer or a field deputy or inspector of the department. However, no person served a

complaint for violating this section shall be found responsible if he produces in court or the office of the police officer, field deputy or inspector of the department a legible operator's or chauffeur's license or an authorized duplicate of the license issued to him and valid at the time of the alleged violation of this section.

officers must have reasonable cause to suspect that the motorist has committed a crime. Police officers cannot stop motorists for violations of *civil* traffic laws, he continues, because the officers do not suspect the motorists of committing crimes. The state responds that the reasonableness of a stop does not turn on whether a state defines its traffic infractions as civil or criminal.

A.R.S. § 28–1074 authorizes peace officers or duly authorized agents of traffic enforcement agencies to "stop and detain a person as is reasonably necessary to investigate an actual or suspected violation of this title and to serve a copy of the traffic complaint for any alleged civil or criminal violation of this title."

In 1983, the Arizona Legislature amended A.R.S. § 28–181 to make the penalties for violations of certain traffic laws civil rather than criminal.[3] As a result, such offenses as speeding and disobeying a red signal, failure to register a motor vehicle, and failure to carry one's license are punishable by fines only, not imprisonment. *See, e.g.,* A.R.S. §§ 28–326(D), 28–423, 28–645(A). Such civil traffic infractions also are governed by a separate set of procedural rules. *See* Rules of Procedure in Civil Traffic Violation Cases. The legislature created this classification of civil traffic violations and a quasi-administrative procedure as a way to expedite their enforcement. *State v. Walker,* 159 Ariz. 506, 768 P.2d 668 (App.1989).

▪ We recognize that the fourth amendment applies to *any* governmental action, not just one arising out of possible criminal activity. *See, e.g., Marshall v.*

*Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) (federal inspection under interstate commerce power of health and safety of work place); *See v. Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) (inspection of warehouse for municipal fire code violations); *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (inspection of residence for municipal fire code violations). The essential purpose of the fourth amendment is to impose a standard of "reasonableness" upon the exercise of discretion by government officials, including law enforcement officers, in order to safeguard the privacy and security of individuals against arbitrary invasions by the government. *Delaware v. Prouse,* 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979). The constitutionality of a governmental seizure, therefore, must be judged by balancing the nature and quality of the intrusion on the individual's fourth amendment interests against the importance of the legitimate governmental interests alleged to justify the intrusion. *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *see also Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984).

▪ Stopping an automobile and detaining its driver to serve a traffic citation is a seizure within the meaning of the fourth amendment, even though the detention is brief and the purpose of the stop is limited. *Delaware v. Prouse,* 440 U.S. at 653, 99 S.Ct. at 1396, 59 L.Ed.2d at 667. Therefore, a stop to serve a traffic citation must comport with the constitutional requirement of reasonableness.

---

**3.** A.R.S. § 28–181 provides:

   A. A person violating any provision of this title, or failing or refusing to do or perform any act or thing required by this title, is guilty of a class 2 misdemeanor, unless the statute defining the offense provides for a different classification. This subsection does not apply to any provision or requirement of chapter 3, 4 or 6 or chapter 7, article 8 or chapter 8, article 3.2 of this title.

   B. Any violation of or failure or refusal to do or perform any act or thing required by chapter 3, 4 or 6 or chapter 7, article 8 or chapter 8, article 3.2 of this title constitutes a

civil traffic violation unless the statute defining the violation provides for a different classification. Civil traffic violations are subject to the provisions of chapter 6, articles 20 and 21 of this title.

(Footnotes omitted.) Chapter 3 deals with motor vehicle registration; chapter 4, operators and chauffeurs; chapter 6, traffic laws; chapter 7, article 8, motor carrier financial responsibility; chapter 8, article 3.2, vehicle service transporter plates. Chapter 6, article 20 deals with parties, procedures upon arrest and reports in criminal cases, and article 21 outlines procedure for adjudication of civil traffic violations.

■ The state's legitimate interest in authorizing its agents to stop motorists to issue citations for traffic violations outweighs the minimal intrusion suffered. The state has a valid interest in seeing that the roadways remain safe for use by all citizens. *See, e.g., State v. Powell,* 61 Haw. 316, 603 P.2d 143 (1979). Citing motorists as they violate traffic laws helps ensure that they will obey the laws and also provides law-enforcement agents with the opportunity to check whether motorists have complied with licensing requirements. This is a reasonable exercise of the state's police power.

Moreover, even if we accepted Boudette's argument that the officer could not stop him for a civil violation, his interpretation of the law is hypertechnical at best. Fourth amendment cases often use the term "public offenses" when discussing search and seizure issues. *See, e.g., State v. Ochoa,* 112 Ariz. 582, 544 P.2d 1097 (1976). The word "crime" includes violations of public laws, such as traffic regulations. *See, e.g., Callan v. Wilson,* 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223 (1888); *People v. Babb,* 103 Cal.App.2d 326, 229 P.2d 843 (1951); *see also State v. Inman,* 301 A.2d 348 (Me.1973); *Squadrito v. Griebsch,* 1 N.Y.2d 471, 154 N.Y.S.2d 37, 136 N.E.2d 504 (1956). In Arizona, an offense for which a sentence is a fine only is considered a petty offense, as defined in the criminal code. A.R.S. § 13–105(24).

For the above reasons, we hold that A.R.S. § 28–1074 is constitutional.

## CONCLUSION

We reverse Boudette's conviction for violating A.R.S. § 28–1075(B), but affirm the convictions on the other two citations.

KLEINSCHMIDT, P.J., and FIDEL, J., concur.