Stein, J.
*1181 After auditing petitioner, the Department determined that there were taxes due on petitioner’s intrastate sales of fax, telex, email and EDI services in the amount of $560,095.35 for the period from March 1, 2001 through May 31, 2004.[2] Upon petitioner’s application to the Division of Tax Appeals seeking redetermination or a revision of the tax assessment, a hearing was held before an Administrative Law Judge (hereinafter ALJ), who determined that Tax Law § 1105 (b) (1) (B) should be narrowly construed, with any ambiguity resolved in favor of petitioner. The ALJ concluded that petitioner’s services did not fall within what he denominated the “commonly understood” meaning of the term telegraphy for purposes of the statute and, as such, were not taxable. The Department’s Division of Taxation filed a notice of exception to the ALJ’s determination.
Following oral argument, the Tribunal reversed the ALJ’s determination, finding that, because Tax Law § 1105 (b) (1) (B) imposes a tax on “telephony and telegraphy and telephone and telegraph service of whatever nature,” a broad construction should be given to the terms describing the items to be taxed. The Tribunal then concluded, among other things, that petitioner’s electronic messaging services constituted telegraphy[3] as that term is defined by 20 NYCRR 527.2 (d) (2) and, as such, are subject to taxation. Petitioner commenced this CPLR article 78 proceeding pursuant to Tax Law § 2016 seeking review of the Tribunal’s final determination, and we now confirm.
Initially, we note that our review of the Tribunal’s determination is limited where, as here, the question before the Tribunal *1182 was “one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially” (Matter of American Tel. & Tel. Co. v State Tax Commn., 61 NY2d 393, 400 [1984] [internal quotation marks and citation omitted]). It is axiomatic that “[i]f the agency’s determination is not supported by substantial evidence or it constitutes a clearly erroneous interpretation of the law or the facts, it will be annulled, but if it is supported by facts or reasonable inferences that can be drawn from the record and has a rational basis in the law, it must be confirmed” {id. [citation omitted]).
Turning to the merits, Tax Law § 1105 (b) (1) (B) provides, as relevant here, that “[t]he receipts from every sale . . . of . . . telegraphy and . . . telegraph service of whatever nature” are subject to taxation (emphasis added). The applicable regulations define telegraphy as “use or operation of any apparatus for transmission of . . . coded or other signals” (20 NYCRR 527.2 [d] [2]). Included in the definition of telegraphy are “[m]essage switching services,” which transmit messages to computers over lines leased from communications carriers, fax services and teletypewriter services (20 NYCRR 527.2 [d] [2]). On the other hand, a service is not considered telegraphy where it “is merely an incidental element of a different or other service purchased by the customer” (20 NYCRR 527.2 [d] [4] [for example, a central alarm system, which uses signal transmissions]; see New York State Cable Tel. Assn, v State Tax Commn., 59 AD2d 81, 83 [1977]).
In our view, whether Tax Law § 1105 (b) (1) (B) is construed narrowly — as petitioner argues it should because it is a statute that levies a tax (see e.g. Debevoise & Plimpton v New York State Dept. of Taxation & Fin., 80 NY2d 657, 661 [1993]) — or broadly — as respondent Commissioner of Taxation and Finance contends based upon the express language of the statute — the Tribunal’s determination to interpret such statute as applicable to petitioner’s services should be upheld. Petitioner describes its service as one whereby the customer may send petitioner text or data, in any format, which petitioner can then convert to another format (for example, a text message to a fax). Additionally, petitioner may add logos or letterhead to the message before sending the information to the designated recipient and provides a secure email service on its closed network, as well as tracking and authentication features. During the relevant time, petitioner *1183 used simple mail transfer protocol (hereinafter SMTP)[4] to route data over the Internet and its own network. Applying the definition of telegraphy set forth in 20 NYCRR 527.2 (d) (2) to petitioner’s services, it is reasonable to conclude that this process entails the use of “coded or other signals” to transmit information.[5] Indeed, “Example 3” of 20 NYCRR 527.2 (d) (2) specifically includes “[m]essage switching services, transmitted to a computer over lines leased from a communication carrier” as telegraph services subject to tax, and “Example 4” specifically includes “[facsimile” or fax services as taxable.
Even if we were to find that the definition of telegraphy set forth in the regulation does not cover petitioner’s services, when we give meaning and effect to all of the statutory language and apply the usual and ordinary meaning of the term telegraphy[6] (see Rosner v Metropolitan Prop. & Liab. Ins. Co., 96 NY2d 475, 479 [2001]; Debevoise & Plimpton v New York State Dept. of Taxation & Fin., 80 NY2d at 661), we discern no error in the Tribunal’s determination that such services are taxable as telegraphy. In light of the definition provided by the controlling regulation and the ordinary meaning of telegraphy, we reject petitioner’s contentions that we should consider extrinsic information to ascertain the Legislature’s intention (see Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]) and/or that we should resort to interpreting the meaning of telegraphy based upon the application of the “mere conduit” test (see Quotron Sys. v Gallman, 39 NY2d 428, 431 [1976]).[7]
*1184 Petitioner’s remaining contentions have been considered and found to be unavailing.
Mercure, J.P., Malone Jr., Kavanagh and Garry, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

. Petitioners agreed that 47% of the assessed amount was owed, leaving $297,358.71 in dispute.

. Although reference is repeatedly made to telephony and telegraphy, it appears that the Tribunal’s determination was based on its conclusion that petitioner’s services constituted telegraphy only.

. SMTP transmits commands and replies over lines via a transmission channel (see J. Klensin, Simple Mail Transfer Protocol Memo at 14 [Oct. 2008], available at http://tools.ietf.Org/html/rfc5321#ref-25 [accessed Nov. 21, 2012]). To complete the transmission, SMTP utilizes “a numeric completion code (indicating failure or success) [for program use] usually followed by a text string [for human users]” (id.).

. We view petitioner’s addition of letterhead, logos and the like as merely incidental to the principal service of message transmission.

. Telegraphy is defined as “the art or practice of constructing or operating telegraphs” (Dictionary.com, http://dictionary.reference.com/browse/ telegraphy?s=t [accessed Nov. 30, 2012]) which, in turn, are defined as, among other things, “an apparatus, system, or process for transmitting messages or signals to a distant place, especially by means of an electric device consisting essentially of a sending instrument and a distant receiving instrument connected by a conducting wire or other communications channel” (Dictionary-.com, http://dictonary.reference.com/browse/telegraphs [accessed Nov. 30, 2012]).

. Notably, the Quotron case concerned a franchise tax imposed pursuant to an entirely different statute upon services that are distinguishable from those at issue here. However, even if the “mere conduit” test was applied *1184 here, it would not provide a basis to disturb the Tribunal’s determination that petitioner’s services constitute telegraphy subject to taxation under Tax Law § 1105 (b).